**COFER et al. v. UNITED STATES.**

Circuit Court of Appeals, Fifth Circuit.
January 30, 1930.

No. 5548.

678

W. I. Stone, of Coffeeville, Miss., and Wade H. Creekmore and H. H. Creekmore, both of Jackson, Miss. (Creekmore & Creekmore, of Jackson, Miss., Stone & Stone, of Coffeeville, Miss., and Gore & Gore and A. A. Pogue, all of Marks, Miss., on the brief), for appellants.

Lester G. Fant, U. S. Atty., of Holly Springs, Miss., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The four appellants were convicted in the District Court of the United States for the Northern District of Mississippi for a violation of section 242, title 18, of the U. S. Code (18 USCA § 242), in conspiring to deter, by force, intimidation, or threat, one Pruitt, a witness before a court of the United States, from testifying in a matter pending therein freely, fully, and truthfully, and to injure said witness on account of his having so testified. They were sentenced under their convictions and have appealed from the judgments of conviction and the sentences imposed upon them. The evidence showed that the witness, Pruitt, was murdered by being shot with buck shot fired from two guns at a place near his home, and the government contended that the appellants conspired to bring about his murder.

The appellants question the sufficiency of the indictment upon the grounds that it does not show that the court in which the witness had testified and was again to testify had jurisdiction of the case in which he was a witness, and further because the nature of his evidence, past and prospective, was not set out in the indictment. We think the indictment sufficiently shows the jurisdiction of the court in which the case was pending, and that it was not required to set out the nature of the evidence or expected evidence of the witness.

The appellants also complain of the introduction of certain evidence procured by three separate searches and seizures of the premises of the appellants Ellerson Cofer, Lee Cofer, and Floyd Carr. The seizures and searches were made by the sheriff of Yalobusha county, Mississippi, under three search warrants sworn out by him before a justice of the peace of that county. The search warrants all directed the sheriff to search for and to seize, if found, "said intoxicating liquors and such stills or integral parts thereof, vehicles, receptacles, vessels, and appliances as are used in connection therewith." The warrants authorized no search or seizure of guns or shells. The sheriff in executing the warrants seized at the home of the appellant Ellerson Cofer, who at the time of the search was in jail, in a locked trunk four shells loaded with buckshot, which were later introduced in evidence by the government upon the trial. The sheriff also presented a search warrant to the wife of the appellant Lee Cofer, at his home, and asked her for an automatic shotgun, which she gave him and which he and his posse loaded with shells procured by them for the purpose and fired from the gun and then returned the gun to the wife of Lee Cofer. The same automatic gun was afterwards retaken by the officers from the possession of one Noel Carr when he was arrested. The sheriff also upon a similar search warrant presented to appellant Floyd Carr, at his home, demanded and secured a Winchester pump gun, which he and his posse also loaded with shells and fired, and after doing so returned the pump gun to Floyd Carr, from whom it was subsequently taken by officers upon the arrest of Floyd Carr. The two guns referred to and the shells which had been exploded in each by the sheriff were introduced upon the trial by the government. No complaint is made by appellants because of the introduction of the two guns, they having been legally seized when Noel Carr and Floyd Carr were arrested. Complaint is made of the introduction of the shells, those taken from the trunk of Ellerson Cofer, and those exploded in the guns taken from the premises of Lee Cofer and Floyd Carr on December 9th, the time of the search of their premises by the sheriff.

The search warrant did not authorize the seizure of the shells in Ellerson Cofer's trunk. It described the property to be searched for and seized as intoxicating liquor, stills and their appurtenances. The sheriff was not a trespasser on Ellerson Cofer's premises, but he had no authority to seize any property not described in the search warrant. His testi-

mony shows that he did not and could not have seen the shells as they lay in the trunk well enough to have described them, or to have read the inscriptions on them. No one was at Ellerson Cofer's home when it was searched. Three government prohibition agents accompanied the sheriff on the search. The sheriff testified that the purpose of seizing the guns and shells and firing the guns was to get evidence in the conspiracy case, and that the shells were turned over to the agent of the Department of Justice, who testified that he had asked the sheriff for help in getting evidence in the conspiracy case, and that he told the sheriff that he wanted him to look out for the guns, when he searched the appellants' houses for liquor, though he did not suggest the search to the sheriff.

It is clear that the search was participated in by United States prohibition officers and an agent of the Department of Justice, the latter having authority to investigate the conspiracy case. The action of the state officers, so adopted and participated in by federal officers, in searches and seizures, which were illegal, prevented the government from using the evidence obtained by such illegal searches and seizures. Ownership of the property seized in appellant is not essential, where, as in this case, it was taken from his premises and possession. The appellant, Ellerson Cofer, testified in his own behalf that he might have had buckshot shells of the kind claimed to have been found in his trunk in the pocket of his hunting coat, but denied having any in his trunk, and denied knowing anything of those introduced in evidence and exhibited to him. His testifying after the introduction of the shells in evidence by the government may have been induced by the introduction of the illegal evidence, and so he cannot be said to have voluntarily testified, or to have waived his objection to the illegal evidence thereby.

The introduction of the buckshot shells found in Ellerson Cofer's trunk was prejudicial to him, and not merely cumulative evidence. The evidence of the government to connect him with the conspiracy was through an attempt to connect him with the shooting of Pruitt, the witness, who was charged to have been the victim of the conspiracy. At the place of the shooting of Pruitt four empty buckshot shells were found, and the government's expert testified to a correspondence between the empty shells found at the place of the murder of Pruitt and those testified by the sheriff to have been seized by him in Ellerson Cofer's trunk. We think the introduction of the buckshot shells taken by the sheriff from Ellerson Cofer's trunk was illegal and prejudicial and requires the judgment of conviction against him to be reversed. Cofer v. State, 152 Miss. 761, 118 So. 613; Gambino et al. v. U. S., 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381.

The cases of Lee Cofer and Floyd Carr may be considered together. The search warrants in each were subject to the same infirmity as in the case of Ellerson Cofer. They authorized the seizure only of intoxicating liquor, stills or their appurtenances, and did not authorize the seizure of guns or shells. In the cases of Lee Cofer and Floyd Carr the sheriff secured guns, used them to make experiments by exploding shells in them, with the purpose of comparing the exploded shells with those found at the scene of the murder, thereby to show that the guns seized were the guns from which were fired the buckshot shells which killed the witness Pruitt. At the home of Lee Cofer the sheriff, after presenting the search warrant to his wife, asked her if there were any guns in the house. The wife thereupon produced and delivered to the sheriff a gun which the sheriff told her he would fire and then return to her, and her reply was that he should be sure to return it. The sheriff took the gun from her, made his experiment, and returned it to her. It came again into the possession of the officers upon the subsequent arrest of Noel Carr, and it is conceded by appellants that it was lawfully held by the government at the time of the trial; but appellants contend that it was unlawfully seized by the sheriff, when, on December 9th, he made his experiments with it. We think the gun was delivered to the sheriff by the wife of Lee Cofer in response to the search warrant, which the sheriff had read to her, and not voluntarily. The wife was without authority to bind her absent husband by waiving a legal warrant, or consenting to an unauthorized search. Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654.

In the case of Floyd Carr we think his surrender of the gun to the sheriff was in submission to the authority of the search warrant which the sheriff had exhibited to him, and was not a voluntary consent to search. The temporary taking by the sheriff of the two guns for the purpose of using them to make evidence against the appellants Lee Cofer and Floyd Carr was a seizure by the sheriff, and an illegal one, and the evidence produced by it, consisting of the exploded shells, should have been excluded. The participation of the government in the search and sei-

zure through the prohibition agents and the agent of the Department of Justice made the seizure illegal as to the government. Gambino et al. v. United States, supra.

■ The shells, with the marks of firing, the results of the sheriff's experiments, were before the jury, together with the evidence of the sheriff that they were fired from the guns he had secured by the illegal search and seizure. The government expert testified that the empty shells found at the scene of the murder and the experimental shells were fired by the same gun. The introduction of the experimental shells tended to connect Lee Cofer and Floyd Carr, the possessors of the guns, with the conspiracy that resulted in the killing of Pruitt, and was prejudicial to them. There was evidence of Lee Dickson, the agent of the Department of Justice, that he had exploded shells from each of the same guns, with which the sheriff had experimented, after the guns had legally come into the possession of the law by their subsequent seizure at the time of the arrests of Noel Carr and Floyd Carr.

We do not think that this evidence does away with the injury resulting to appellants from the introduction of the shells exploded by the sheriff, while he was in unlawful possession of the guns, and from his evidence with reference thereto. The jury might have given credit to the testimony of Lee Dickson with reference to his experiments and the shells introduced in connection with his testimony, when corroborated by the evidence of the sheriff and the exhibition of the shells he had exploded to the jury, when the jury would have been unwilling to credit the uncorroborated evidence of Dickson. Again, the information obtained by the illegal seizure of the sheriff of the two guns led to the subsequent experiments made by Dickson, and to the shells resulting from such experiments, and infected this evidence with the illegality of the original seizure. We think the introduction of the shells exploded by the sheriff and his evidence as to the experiments conducted by him was illegal and prejudicial to the appellants Lee Cofer and Floyd Carr,

and should operate to reverse the judgments of conviction against them.

■ The remaining appellant, Fred Hamilton, was not searched, nor was any of his property seized, and no question as to illegal evidence of that nature arises in his favor. The conspiracy was charged to have been between the four appellants and one Glen Davis, whose acquittal was directed by the District Judge. The conclusion we have reached as to the three appellants, together with the elimination of Glen Davis from the case, leaves the conviction of the appellant Fred Hamilton alone standing. The rule in conspiracy cases is that, when the conviction of all the conspirators except one is reversed, the conviction of that one should also be reversed, since, in conspiracy cases, at least two must be convicted or none. Otherwise it might well be that the sole convicted defendant might be the only one ever convicted in violation of this rule.

The government relies upon the case of Motes v. United States, 178 U. S. 458, 20 S. Ct. 993, 44 L. Ed. 1150, to the contrary. In that case there was a reversal as to all the defendants who were tried, except the appellant Motes. Motes, upon the trial, testified that he and one Bob Taylor, who had pleaded guilty to the indictment, had killed Thompson, the victim of the conspiracy, and that none of the other defendants who were on trial with him, had anything to do with the conspiracy or the killing. The Supreme Court said that, as the proof of the guilt of Motes was conclusive, the unwarranted admission of a statement made by Bob Taylor, though improper, ought not to work a reversal of the judgment against Motes in view of his evidence that together with Taylor he had killed Thompson in pursuance of the conspiracy. In this case, the appellant Hamilton denied any part in the conspiracy, or in the killing of Pruitt, the victim of it. In this state of the record, the conviction of Hamilton should also be reversed.

Reversed and remanded as to all the appellants.