**UNITED STATES of America, Plaintiff,**

v.

**D. S. GREER, Defendant.**

**No. CRG 693–K.**

United States District Court
N. D. Mississippi,
Greenville Division.

March 28, 1969.

J. Murray Akers, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff.

Philip Mansour, Greenville, Miss., for defendant.

## OPINION OF THE COURT

KEADY, Chief Judge.

Defendant, indicted under 18 U.S.C. § 2313[1] for knowing receipt and concealment of a stolen 1967 Buick Electra 225 automobile, moved prior to trial for production of certain documents and for suppression of evidence, pursuant to Rules 16 and 41(e), F.R.Crim.P., respectively. Upon an evidentiary hearing held February 17, 1969, this court determined that defendant had been given adequate warnings prior to and upon arrest by agents of the Federal Bureau of Investigation as required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that certain evidence obtained by search of Greer's automobile in his absence without a warrant was not the fruit of an unreasonable search. Reserved for disposition at a later date were additional questions raised by defendant concerning the validity of the complaint filed with the United States Commissioner and the arrest warrant issued pursuant thereto, and the right of the government to withhold certain written reports of the Federal Bureau of Investigation describing the investigating agents' activity on April 12 and 13, 1968, the days the subject automobile was examined and seized, respectively. The court also requested briefing with respect to the search-and-seizure question in the light of decisions coming to

its attention subsequent to its previous ruling of admissibility. Because of the conflict between the original findings and this opinion, the views expressed by the court at the conclusion of the evidence are withdrawn.

### I.

Admissibility of evidence obtained from an examination of the subject automobile.

After an initial interview with D. S. Greer, Special Agents John William Neely and William C. Mearns of the Federal Bureau of Investigation went to defendant's home without a search warrant on April 12, 1968, for the purpose of obtaining the Vehicle Identification Number (VIN) of the automobile they suspected was stolen. They knocked on the door, found Mrs. Greer at home, and obtained from her the keys to the automobile. They approached the car which was located in an open carport attached to the house, unlocked and opened it and observed the VIN "482397H273349" located on a plate on the left front doorpost. They copied the number on paper and also obtained its impression with fingerprint ink. On the following day, April 13, 1968, Agents Neely and Mearns, along with Greenville, Mississippi, Police Officer Roy Long, went to Greer's home, again without warrant, and seized the vehicle. The evidence is clear that on both occasions the defendant, D. S. Greer, was absent from his residence, did not consent to the examination and seizure, and had no opportunity to protest the acts of the officers.

■ An automobile has the status of a house, so far as the protection of the Fourth Amendment[2] is concerned, subject to certain limitations arising from its mobility. Carroll v. United States,

1. 18 U.S.C. § 2313 provides as follows:
   "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined

   not more than $5,000 or imprisoned more than five years, or both."

2. The Fourth Amendment to the Constitution of the United States provides that:
   "The right of the people to be secure in their persons, houses, papers, and ef-

267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Agent Neely admitted that there was no need for immediate action which would justify a search without warrant.[3]

On the issue of warrantless search, we are confronted with the government's contention that the examination of an automobile merely to obtain the VIN was not a "search" within the ambit of the Fourth Amendment. This poses a serious question, for, although decisions of various Courts of Appeal, including the Fifth Circuit, have held such an examination not to be a "search", none has done so with respect to a factual situation like that presented here. Indeed, the factual distinctions between those cases and that at bar are in themselves, we think, sufficient to justify a different holding here.

In Weaver v. United States, 374 F.2d 878 (5 Cir. 1967), the defendant had been arrested by a local police officer without a warrant when he had parked his automobile next to a building so that the license tag was hidden and because he was otherwise acting suspiciously. The defendant was taken to the local police station, where he was interrogated by an FBI agent. During the course of the interview, the agent informed defendant that he wished to make a routine check of the car and defendant did not object. He then proceeded while defendant was still in custody to examine the public VIN on the car doorpost, which tallied with the Georgia

registration certificate Weaver had shown him earlier. Weaver was later indicted, when, following a second arrest and examination of the same automobile, the confidential VIN adjacent to the radiator was determined to be not the same as the public VIN. Under these circumstances the Court of Appeals for the Fifth Circuit held that the first examination was not a search, saying at 882:

"[T]he method which Agent Louderman used to obtain the public identification number of the vehicle was nothing more than a routine questioning of a person *arrested* from out of the state. His subsequent checking of the number of the vehicle was mere routine." (Emphasis added)

In United States v. Graham, 391 F. 2d 439 (6 Cir. 1968), the defendants' automobile was searched at the local police station after they had been taken into custody. The forcible opening of the car door revealed the serial number attached to the doorpost, and the precise question to which the Court addressed itself was whether this action by the officers amounted to a constitutionally protected "search". The Court's language in holding that under the particular facts there had been no search points up the legal distinction to be properly made between the line of decisions cited by the government and the case sub judice, as follows at 442–443:

"*Where police obtain an article for safekeeping from a suspect taken in custody pursuant to a lawful arrest,* we find no authority which requires them to get a search warrant before

fects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

3. Neely testified as follows at page 109 of the record:
"Q. (by defendant's attorney) All right sir, did you attempt to get a search warrant before you went out there?

A. We did not.
Q. Could you have gotten one?
A. Yes, I think we could have.
Q. Were you afraid that the automobile may leave the jurisdiction or anything of that type before you got a warrant?
A. No.
Q. You had plenty of time in the event that you determined that it was necessary?
A. We could have."

examining the article for the purpose of finding a serial number by which the article might be accurately defined.

\* \* \* \* \* \*

"It is here concluded and held that an examination of an automobile *properly in police custody* is not a search thereof \* \* \*." (Emphasis added.)

Cotton v. United States, 371 F.2d 385 (9 Cir. 1967), involved examination of the VIN by police while the suspect was being held subsequent to arrest. Again, the holding of the Court (at 394) would appear to refute the position put forth by the government here:

"[W]hen a policeman or a federal agent \* \* \* has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number \* \* \* [H]e need not obtain a warrant before doing so *in a case where the car is already otherwise lawfully available to him.*

\* \* \* \* \* \*

"It is not a search merely to look at an automobile, *unless the opportunity to do so is obtained by an unlawful entry upon protected premises which is not this case.*" (Emphasis added)

██ In short, those decisions cited by the government serve not to foreclose defendant's contention, but rather to bolster it. The undisputed facts here are that FBI agents entered without warrant upon private, protected property of one in possession of an automobile which they examined in order to confirm a mere suspicion that it had been stolen. The defendant had not been arrested, had in no way consented to any search of his private property, and was absent when the examination took place. Their activity clearly constituted a "search" protected by the Fourth Amendment. That being true, law officers "must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950). Under the totality of the circumstances surrounding the examination of the automobile by Agents Neely and Mearns, the search, made without justification or necessity, was unreasonable, requiring the suppression of any evidence obtained therefrom. Holzhey v. United States, 223 F.2d 823 (5 Cir. 1955).

The government asserts, however, that the constitutional rights of the defendant were effectively waived when his wife permitted the agents to examine the automobile without warrant. This precise question was first raised by the United States Supreme Court in Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1920), but not directly dealt with, as the Court said: "We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights," and concluded "under the implied coercion here presented, no such waiver was intended or effected." The Court of Appeals for the Fifth Circuit, however, expressly disposed of the point, and adversely to the government, in Cofer v. United States, 37 F.2d 677, 679 (5 Cir. 1930), which involved a search in Mississippi participated in by federal officers. The Court specifically held that "The wife was without authority to bind her absent husband by waiving a legal warrant, or consenting to an unauthorized search." The state law of Mississippi is in accord, as to a search made by a state officer for violation of state law.[4]

---

4. The Mississippi Supreme Court held unequivocally in Henry v. State, 253 Miss. 263, 154 So.2d 289, 295 (1963) that a wife may not waive for her husband the necessity of a search warrant:

"It is suggested by the Attorney General in the instant case that the wife of defendant consented to the search of the automobile and thereby waived the necessity of a search warrant. We prefer,

■ The above rule, so unequivocally announced in *Cofer,* has never been modified in this Circuit and cannot be considered other than controlling upon us, irrespective of differing views held by other courts.[5] Thus, although Mrs. Greer did, in fact consent freely to the search of her husband's automobile, she was incapable of effectively waiving his constitutional right under the Fourth Amendment, and her permission could not confer upon the officers the lawful right to conduct the search. The mere consent of a wife, not shown to have authority from her husband for the waiver of a right of constitutional dimensions, must be regarded as a nullity, and this remains true even in the absence of coercion, express or implied, directed at the wife.

■ Nor do we find any legal significance in the government's assertion that Mrs. Greer deemed the automobile to be hers at the time she permitted the search to take place. Of crucial importance are the facts that the bill of sale was made out to D. S. Greer and not his wife, that no transfer by bill of sale was ever effected by Greer to his wife, that the testimony at the hearing showed that the Greers regarded the car as a family car with both him and his wife having access to it, and perhaps of greatest significance, D. S. Greer, and not Mrs. Greer, was the person suspected of unlawfully receiving and concealing the car. Thus, the government may not be heard to transfer the constitutional right against unreasonable search from the defendant to Mrs. Greer merely upon her assertion that she had been granted a wife's use thereof.

## II.

The validity of the complaint and arrest warrant.

■ In the complaint filed with the United States Commissioner and in the arrest warrant issued pursuant thereto, the transportation of the automobile in interstate commerce, unlike 18 U.S.C. § 2313, the statute defining the crime, was described in the past tense.[6] Defendant contends that the decisions of the Court of Appeals for the Fifth Circuit in Hill v. Sanford, 131 F. 2d 417 (5 Cir. 1942), and Grimsley v. United States, 50 F.2d 509 (5 Cir 1931), holding that indictments so describing the essential element of interstate transportation are fatally defective, compel the complaint and arrest warrant in this

---

however, to follow the great weight of authority which holds that a wife cannot waive the constitutional rights of her husband. We hold that appellant's wife did not waive his constitutional rights by consenting to the search of his automobile. Cofer v. United States, 5 Cir., 37 F.2d 677 (Miss.1930) [and other cases cited]."

5. The Court of Appeals for the Eighth Circuit held in Roberts v. United States, 332 F.2d 892, 895 (8 Cir. 1964) that:
   "Whether the Fourth Amendment protection against unreasonable searches and seizures can in effect be waived by the consent of one's spouse to enter and search premises jointly occupied and controlled by husband and wife was appropriately regarded by the lower court as a 'serious question' and a 'close one.' * * * Without the benefit of a Supreme Court clarification of the issue, those federal courts which have considered the question have taken divergent positions. Compare, e. g., Stein v. United

States, 9 Cir. 1948, 166 F.2d 851, 854–855, certiorari denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768, and United States v. Sergio, D.C.N.Y., 1937, 21 F. Supp. 553 [holding that a wife may waive her husband's Fourth Amendment rights], with Cofer v. United States, 5 Cir. 1930, 37 F.2d 677, 679, and United States v. Rykowski, D.C.Ohio 1920, 267 F. 866, 871."

6. The complaint charged that Greer did:
   " * * * receive, conceal and store one 1967 Buick Electra 22 automobile, VIN 482397H273349, the property of Alma Love, St. Louis, Missouri, [sic] which *had been transported* in interstate commerce from St. Louis, Missouri to Washington County, Mississippi, knowing said vehicle to have been stolen." (Emphasis added)
   Similarly, the warrant charged Greer with knowingly receiving and concealing a stolen automobile which "had been transported" in interstate commerce.

case to be held invalid. We must agree. "The act, as is apparent on the face of it, is based upon the commerce clause of the Constitution, and does not assume to punish one who receives or sells a stolen motor vehicle, after it has ceased to move in, or be a part of, interstate or foreign commerce." Grimsley v. United States, supra, at 509. Under Rule 3, F.R.Crim.P., the complaint is a written statement of the "offense charged", and if there is no offense charged in the complaint, it may not be the basis for a valid arrest warrant. Likewise, we are unimpressed by the government's assertion that, by waiving preliminary hearing, the defendant waived his right to object to the defective arrest warrant, for the United States Supreme Court held in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), that:

"We think it clear that petitioner by waiving preliminary examination before the United States Commissioner, did not surrender his right subsequently to contest in Court the validity of the warrant on the grounds here asserted. A claim of this nature may involve legal issues of subtlety and complexity which it would be unfair to require a defendant to present so soon after arrest, and in many instances as here, before his final selection of counsel."

■ The government further urges that, even assuming, arguendo, the invalidity of the complaint and arrest warrant, the arrest was valid for probable cause existed at the time. True, the Court of Appeals for the Fifth Circuit in Hagans v. United States, 315 F.2d 67 (5 Cir. 1963) held that the mere fact that an arrest warrant may be invalid is immaterial if, in actuality, probable cause exists to make an arrest without warrant. Upon the present record it cannot be said that the government had probable cause to arrest the defendant on November 22, 1968. First, the record of the evidentiary hearing indicates that the government was apparently standing on the validity of the complaint and arrest warrant, and therefore, did not attempt to detail all the information possessed by the FBI at the time of arrest bearing upon probable cause. We do not foreclose the offer of additional proof on that issue at a later date. The evidence that was offered as to the information had by the agents at the time of arrest was inadequate to constitute probable cause, especially in light of the fact that the most vital information possessed by the officers was gained by unreasonable search and seizure.

■ Although the term "probable cause" has been variously defined, it means, in essence, that when an arrest is made without warrant, the arresting officers must possess a knowledge of facts and circumstances gained from reasonably trustworthy sources of information sufficient to justify a man of reasonable caution and prudence in believing that the arrested person has committed or is committing an offense. See Miller v. United States, 356 F.2d 63 (5 Cir. 1966). The quantum and credibility of evidence necessary to support an arrest warrant need not be as great as that required to establish the accused's guilt at trial. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

We shall briefly review the evidence the government showed Agents Neely and Mearns to have possessed at the time they arrested Greer. Around mid-March 1968, Agent Neely received information from a reliable, confidential source that Greer had bought a 1967 Buick Electra 225 automobile that was possibly stolen. The Agents interviewed Greer initially on April 3, 1968, and on May 1, 1968, on which latter occasion they obtained the following signed statement from him:

"I, D. S. Greer, purchased a 1967 Buick Electra 225, black over maroon, from a man who claimed that he was working for a dealer from East St. Louis, Missouri. I did not know that I was buying a stole car."

Greer was again interviewed on May 16, 1968, and on June 5, 1968. At the time of the second interview, he surrendered to them his bill of sale on the subject automobile. Neely admitted on June 5 they had no more information about the alleged crime than they had on May 1, 1968. The final interview with Greer before his arrest took place on June 13, 1968, and no significant information was obtained on that date. Thus, the only information the officers obtained from this informant and from interviews with the defendant was that Greer had purchased an automobile which may have been stolen.

The vital link in the chain of evidence which led the officers to the conclusion that the car was, in fact, stolen—the VIN —was obtained, as heretofore detailed, on April 12 and 13, 1968, as a result of the unlawful search, and therefore, may not be considered as an element of probable cause, and without it, probable cause did not exist.

The testimony of Agent Neely clearly points up the cruciality of obtaining the VIN:

"A. (by Neely) At that time [prior to April 12, 1968] we did not know that the vehicle for a fact was a stolen vehicle, we had only to examine it to obtain the VIN." (R. 107).

\* \* \* \* \* \*

"Q. (by defendant's attorney) And when did you first obtain knowledge that the automobile was in fact stolen?

A. On the 12 of April.

Q. Was that after you examined the automobile?

A. That is correct." (R. 124)

The government made no showing that they had evidence, other than that described, when defendant was arrested on November 22, 1968. We are constrained to hold, therefore, that the arrest of defendant was invalid, as being based upon neither a valid arrest warrant nor upon probable cause, without prejudice, however, to the government to introduce, at time of trial, additional evidence going to the issue of probable cause.

### III.

Availability under the Jencks Act of FBI report concerning the investigating agents' activity on April 12 and 13, 1968, the dates of the search and subsequent seizure of the subject automobile respectively.

At the evidentiary hearing, Agent Mearns testified on cross-examination concerning his activities on the dates the automobile was searched, seized and impounded, and that he had recorded his actions of those days in a written memorandum. Defendant moved for the production of that report under the Jencks Act, 18 U.S.C. § 3500, which provides, in pertinent part, as follows:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness \* \* \* to an agent of the Government shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."

It is undisputed that Agent Mearns was called as a witness for the government, that he personally made and possessed the report sought, that the report related to the subject matter as to which he testified and that the defendant seeks the report for impeachment purposes. The government, however, resists production of the report on two grounds: (1) the testimony was given not "in the trial of the case", but on an evidentiary

hearing on a motion to suppress and for production of documents, and (2) the testimony of the witness to which the report relates was elicited upon cross-examination, not "direct examination" as the Jencks Act provides in both subsections (a) and (b).

▮ As to the first contention, there would appear to be no distinction between the trial of a criminal prosecution on the merits and a pre-trial hearing to suppress evidence and for the production of documents insofar as concerns a defendant's interest in obtaining records in order to impeach a government agent who is offered as a witness against him. That no distinction should be made in this case is manifest from the very nature of the hearing to determine the validity of a search and seizure of defendant's property which produced an essential element of the government's case. Agent Mearns' testimony on cross-examination revealed that he possessed a written record of his activities with respect to the search and seizure, and, since that report would have been available to defendant at trial, it should be furnished to him at the pre-trial evidentiary hearing when the statements of the agent were made and the records were requested by defendant for the same purposes as would be the case at trial.

▮ That the statements of Mearns as to the search and seizure and that he possessed a written record thereof were elicited on cross-examination rather than on direct does not excuse this court from ordering that the records be produced. In Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), the United States Supreme Court endeavored to explicate the construction of the Jencks Act due to numerous questions which had arisen thereunder. The Court held at 349 of 360 U.S., at 1223 of 79 S. Ct. 1293–1294 of 3 L.Ed.2d that:

▮

"Subsection (a) requires that no statement of a government witness made to an agent of the Government and in the Government's possession shall be turned over to the defense until the witness has testified on direct examination. *This section manifests the general statutory aim to restrict the use of such statements to impeachment.*" (Emphasis added)

▮ Thus it is apparent that although the statute speaks only in terms of "direct" examination, its chief purpose is to restrict the use of such statements for impeachment purposes. True, Agent Mearns was called by the government for a limited purpose—to testify that Greer had been fully advised of his *Miranda* rights—but he had accompanied Neely on the dates the automobile was searched and seized and he was the one who had written the report as to their activities on that date. Agent Neely had previously testified at length concerning the search and seizure and Mearns was cross-examined extensively on that subject. When Mearns testified that he had written a report to his superiors concerning his activities on those dates, we think the defendant was entitled to that report in order to impeach him for bias, prejudice, inaccuracy or for whatever other legitimate reason. It is only necessary that the witness has testified on direct examination; it is not a statutory requisite that the testimony concerning the reported activities be elicited on direct examination. An FBI agent is not immune to the operation of the Jencks Act. "We can find nothing in the Jencks Act which suggests that defense counsel are entitled to no statement of the witness, simply because he happens to be an agent of the FBI." United States v. Berry, 277 F.2d 826 (7 Cir. 1960).

An order shall be accordingly issued.