**UNITED STATES of America,**
**Plaintiff,**

v.

**Richard Dean TWIFORD, Defendant.**
**Crim. A. No. 23066–3.**

United States District Court,
W. D. Missouri,
Western Division.

June 3, 1970.

---

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

James P. Fluker, Kansas City, Mo., for defendant.

## ORDER DENYING MOTION TO SUPPRESS

BECKER, Chief Judge.

Defendant herein has been charged by indictment with the offense of possessing goods obtained from interstate commerce with knowledge of their stolen condition, all in violation of Section 659, Title 18, United States Code.

Defendant has now moved to suppress evidence which he contends was obtained by means of an illegal search of his home conducted by agents of the Federal Bureau of Investigation on November 3, 1969. On this motion, a hearing was held on April 29, 1970, and the evidence offered therein showed the following.

On or about November 3, 1969, FBI agents came to defendant's residence on Rural Route #2, Lee's Summit, Missouri. Defendant was not present in the home at the time, but had been absent therefrom for an extended period of two or three weeks, without being legally separated or divorced from his wife. Defendant's wife was at home alone. The agents identified themselves to her and requested her permission to search the house for four cases of whiskey which had apparently been stolen from Yellow Transit Lines. Defendant's wife granted the permission freely and without coercion. She explained that defendant was not at home; that he had been away from home for some time; and that it was his habit to absent himself from the home on many different occasions, on some of which occasions he had stayed away as long as three months. The agents then conducted, in the presence of defendant's wife, a thorough search of the house for the cases of apparently stolen whiskey. The conversations which took place between the agents and defendant's wife during this time show clearly that there was no coercion exercised by the agents to secure consent to the search from defendant's wife and, to the contrary, that defendant's wife was unconcerned and willing that the agents conduct a thorough search. The evidence shows that no reference was made by the agents to their power to obtain a search warrant until after permission had been given to search; that defendant's wife willingly signed a consent to search (she testified at the hearing herein that the agent was "very nice" in asking her to sign it); that defendant's wife was not put in a state of fear by anything the agents did or said before, during or after the search; and that defendant's wife accompanied the agents throughout their search of the house, which she testified that she permitted because she felt that she was innocent, and that no stolen goods were in the house.

The stolen whiskey was not found during the search. But, as they were about to leave the house, the agents saw two cartons of goods on the front porch. They undertook to examine the contents of the cartons and discovered some of the allegedly stolen clothing which is the subject of the indictment herein. The agents stated that they might desire to investigate further with respect to the possible stolen character of the goods, but indicated that they did not desire to seize the goods. Thereupon, defendant's wife stated to the agents that it was her wish that they take the cases containing the clothing into custody, since she was planning on moving from the house in the near future. The goods, subsequently seized, had been stolen from Yellow Freight Systems for whom defendant worked. The agents notified defendant's employer who, with consent of the wife and by private investigators, inspected the boxes, checked the waybills of the employer and identified the boxes as stolen. With uncoerced consent of the wife, the boxes were seized by the employer.

■■ Defendant's first contention is that the search was illegal because "defendant was not under arrest nor was there any warrant outstanding for his arrest." It is well established that a warrantless search is, generally, an unreasonable search and therefore unlawful. Camara v. Municipal Court, 387 U. S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856; Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514. But there are exceptions to the rule. As defendant notes, search incident to a lawful arrest is one such exception. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. But other exceptions include, as well as search of a moveable vehicle under certain circumstances, a search conducted with the consent of the accused. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543. Cf. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. And it is the general rule that "where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either." United States v. Thompson (C.A.5) 421 F.2d 373; United States ex rel. Combs v. La Vallee (C. A.2) 417 F.2d 523; Gurleski v. United States (C.A.5) 405 F.2d 253; United States v. Alloway (C.A.6) 397 F.2d 105; Wright v. United States (C.A.8) 389 F. 2d 996; Maxwell v. Stephens (C.A.8) 348 F.2d 325, cert. den. 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353, reh. den. 382 U.S. 1000, 86 S.Ct. 532, 15 L.Ed.2d 490. The uncontradicted testimony of defendant's wife herein was that she and defendant had once shared the searched premises and that defendant had in the past contributed to the rental of the property paid by the wife under an oral lease. At the time of the search the defendant had deserted his wife and moved out to live alone indefinitely.

■ Defendant, however, contends that the principle that either sharer of a residence may give consent to a search and that evidence may thereby be obtained which will be admissible against either does not extend to cases wherein the sharers of the premises are husband and wife. In support of that contention, defendant cites the cases of United States v. Rykowski (C.A.7) 267 F. 866, 871, and Cofer v. United States (C.A.5) 37 F.2d 677, 679. But the United States Supreme Court has not condemned searches wherein consent might be obtained from the spouse in the absence of any coercion. See Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L. Ed. 654. And in United States v. Thompson, *supra*, the viability of the rule of Cofer v. United States, *supra*, was rejected in the following terms:

"It has been generally assumed in this Circuit, however, that a wife, unlike other co-inhabitants, does not have authority to consent to a search of the

premises she shares with her husband * * * Cofer v. United States, 5th Cir. 1930, 37 F.2d 677. * * * In light of the Court's holding that the wife's consent was not voluntary, the Court's statement concerning a wife's inability to consent to a search might be considered to be dicta. Dicta or not, the rule is contrary to modern authority, see United States v. Pugliese, 2d Cir. 1945, 153 F.2d 497; United States v. Airdo, 7th Cir. 1967, 380 F. 2d 103; Foster v. United States, 8th Cir. 1960, 281 F.2d 310; Roberts v. United States, 8th Cir. 1964, 332 F.2d 892; Stein v. United States, 9th Cir. 1948, 166 F.2d 851; Nelson v. California, 9th Cir. 1965, 346 F.2d 73; State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968), and the time has come to recognize that this forty-year-old statement no longer has vitality." 421 F.2d at 376.

Defendant also places some reliance on the Eighth Circuit case of Roberts v. United States (C.A.8) 332 F.2d 892, cert. den. 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274. But that case unequivocally states that:

" * * * the right of the wife to enter the home which was in her possession and control cannot be seriously questioned and * * * her invitation to and authorization to the officers to enter and search [is] an outgrowth thereof." 332 F.2d at 896.

See also and compare Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L. Ed.2d 668; United States v. Sferas (C. A.7) 210 F.2d 69, cert. den. Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086; United States v. Best (D.Mass.) 76 F.Supp. 857; United States v. Sergio (E.D.N.Y.) 21 F.Supp. 553; 31 A.L.R.2d 1078, 1091. Furthermore, defendant did not live with his wife at the time of the search. He had left the premises to live elsewhere indefinitely. Under the circumstances, the wife's consent made the search valid.

■ Defendant, however, contends that the search must still be a "reasonable" search as described by United States v. Rabinowitz, supra, and by Roberts v. United States, supra. Defendant especially relies on the latter case insofar as it, in defendant's words:

"referred to the lack of implied coercion indicating that there were no statements by officers that they would or could obtain a search warrant if she did not allow them onto the premises [and] also found that the search did not extend to the personal effects of the defendant."

The fact that the officers in Roberts did not allude to the possibility of obtaining a warrant is referred to in that case only as a single factor in determining the presence or absence of coercion. It is not a determinative point. In the case at bar, when the reference to the power of the agents to obtain a search warrant was not made until after permission had been freely given, and then without any threat of either a specific or implied nature and when defendant's wife was never put in fear, there was no coercion, implied or otherwise. Further, the consent of the wife specifically extended to all of the contents of the house and additional express consent was given by defendant's wife to search and seize the parcels of clothing on the porch which provide the subject of the indictment herein. Therefore, the searches and seizure were made with voluntary consent and were reasonable and lawful; and the fruits thereof are not inadmissible in evidence because of any illegality of their seizure.

This case is unlike the recent United States Supreme Court case of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, in which it was held that the grandmother who was a co-occupant of the premises of the accused wherein the search was conducted had in fact been coerced to consent to the search by the officer's representation of possession of a warrant. In contrast there was no coercion in the case at bar.

■ Defendant finally contends that the seized parcels were "personal ef-

fects" and thus unamenable to search even with the wife's consent to enter and search the premises of which she had joint control. As stated above, however, specific consent was given to conduct the search of the parcels on the porch. It is apparently defendant's contention that any such consent is ineffective because of the personal nature of the items. Defendant cites Roberts v. United States, *supra*, as also controlling this issue. *Roberts* stated as follows in respect of "personal effects":

> "Appellant's final attack upon the denial of the Motion to Suppress and the admission of the bullet is an alternative argument to the effect that 'if no implied coercion induced the consent of his wife and if this consent is generally binding upon him, it is without validity in this particular instance, because the property seized was a personal effect of the husband.' He cites in support thereof Holzhey v. United States, 5 Cir., 1955, 223 F.2d 823, and State v. Evans, 1962, 45 Haw. 622, 372 P.2d 365. It should be noted at the outset that Holzhey involved property taken from a *locked cabinet* in defendant's garage apartment to which the officers had been admitted upon the consent of the occupants of an upstairs apartment. And Evans was a state case in which the evidence was taken from a jewelry case (found by the court to be a 'personal effect' of the defendant) in defendant's bedroom bureau drawer. Whatever may be the merits of this point propounded by appellant, it is not applicable here since the bullet cannot be said to be a 'personal effect' of appellant. Black's Law Dictionary (4 ed. 1951) defines personal effects as: 'Articles *associated with person*, as property having more or less *intimate relation to person* of possessor. * * *' (Emphasis supplied.) By no stretch of the imagination can it be held that a bullet fired into a ceiling approximately a year before is 'associated with person' or has an 'intimate relation to' the person of the firer of the weapon.

Additionally, it may be said that appellant abandoned the bullet and thus has no standing to claim it as a 'personal effect.' Cf. United States v. Minker, 3 Cir., 1962, 312 F.2d 632, certiorari denied, 372 U.S. 953, 83 S. Ct. 952, 9 L.Ed.2d 978." (Emphasis in original.) 332 F.2d at 898.

Application of those standards to the case at bar leads to the conclusion that the parcels of clothing were not "personal effects" having an "intimate relation to" defendant when they had been left on the front porch bound in ordinary-looking cases. There was and is probable cause to believe they were unused goods stolen for profit.

The motion to suppress is therefore without merit and must be denied.

It is therefore

ORDERED that defendant's motion to suppress be, and it is hereby, denied.