**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Lee WAGNER, Defendant-Appellant.**

**No. 73–1684.**

United States Court of Appeals, Tenth Circuit.

Argued March 22, 1974.

Decided May 2, 1974.

---

James L. Treece, U. S. Atty., Pepe J. Mendez, Asst. U. S. Atty., for plaintiff-appellee.

Donald L. Lozow and Gary Lozow, Epstein, Lozow & Preblud, Denver, Colo, for defendant-appellant.

Before Mr. Justice CLARK,* and HILL and SETH, Circuit Judges.

PER CURIAM.

The appellant, Robert Lee Wagner, stands convicted by a jury of being in receipt of a stolen motor vehicle which was moving in interstate commerce, knowing the same to have been stolen, 18 U.S.C. § 2313. He was sentenced to two years' imprisonment, suspended, save for a sixty-day work release program. Wagner claims that the District Court erred in not suppressing (1) evidence of the visual observation of the vehicle identification number (VIN) of his car by a Government agent; (2) evidence discovered by a Government agent pursuant to an alleged consent search of Wagner's car; (3) a statement of Wagner to a Government agent after such search; and the refusal of the court to grant a mistrial because of the Government prosecutor's reference in his argument to the jury to the "testimony" of Wagner when in fact he had not taken the stand. We find no merit in any of the points and, therefore, affirm.

1. Special Agent William O. Leach of the Federal Bureau of Investigation had

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

received notice that some motor vehicle titles had been stolen in Ohio. Leach asked the Colorado Department of Motor Vehicles to notify him if any of the titles showed up. On January 29, 1973, Leach was advised that a title listed to a Frank Drummond, 556 Monroe Street, in Denver, had been stolen. Leach determined, however, that address to be listed to a Mrs. L. Wagner and that, after processing, the title was to be mailed to 6748–B East Cedar Drive, Denver, Colorado. Wagner lived at this address. Leach went to the apartment complex and found a car fitting the description on the vehicle title in a carport. Finding no one home, Leach made an exterior visual inspection of the car and observed through the windshield the VIN on the dashboard. It appeared to him that the rivets holding it in place had been tampered with. The next day, accompanied by a Northglenn police officer, Leach returned to Wagner's apartment, identified himself to Wagner and asked him if he owned the car. Upon receiving an affirmative reply, Leach then questioned Wagner about the car without giving him the *Miranda* warning. Leach advised Wagner that he had reason to believe that the car was a stolen one and Wagner stated how he had come into possession of the car. Wagner was also told that he was not a suspect and that probably no prosecution would follow because of the prevailing policy of the United States Attorney. In addition, the police officer advised Wagner that if he changed his story, he would be given immunity from prosecution. Upon the request of Leach, Wagner gave him permission for the car to be examined and gave Leach the keys to the car. On searching the car, Leach pulled the back seat up and removed a shipping document which had a VIN on it. He then checked the motor block VIN and the VIN plate on the front dashboard. The numbers did not match. While Wagner sat in Leach's car, the latter contacted the National Crime Information Center and determined that the car was stolen. Leach then returned the rear seat to Wagner's car, locked it and gave the keys to Wagner. He then asked Wagner if he would return to the latter's house to discuss the matter. Before opening up the discussion, Leach gave Wagner the *Miranda* warnings and thereafter an elaborate, detailed account of the purchase of the car was related by Wagner. The first conversation was suppressed by the District Court since no warning had preceded it. The second conversation was admitted, the court finding that the *Miranda* warning given Wagner before the second conversation was in no wise tainted by the previous failure to give the warning before the first conversation.

The problem as to the closing argument came about when the prosecutor was discussing the testimony of Leach concerning the statements made to him by Wagner in the second conversation. The prosecutor related that Leach testified that Wagner in his statement to Leach "did not know . . . the name of the seller [of the car]; how to contact him; the name on the title would be Drummond's name; never recontacted the seller." The prosecutor continued:

"We have one last document, the check. We have established that Mr. Wagner went to the bank and obtained a check for $5000 on the day in question. We have established that there is only *his testimony* [emphasis supplied] that he paid $8400.00. No matter how you look at it, $8400 is so far below what the market value of that 1973 Lincoln Continental was . . ."

At this point defense counsel interrupted and recited "we have a stipulation that the value of the car is $9000. Now I would object . . ." Whereupon the court interrupted "Don't argue." Defense counsel repeated: "We stipulated to the value of that car." The court then said: "All right. That is true. The stipulation is that the value of the car was approximately $9000. All right proceed from there." The prosecutor then told the jury: "Ladies and gentle-

men, the stipulation does say $9000 and I would recommend to you to read the stipulation in full." The court said: "Well it is not in evidence. They can't read it, but if you want to read it to them again, you can." The prosecutor then said: "All right Your Honor. I have nothing further at this point." The defense then told the court that he had a motion and at the side bar he moved for the mistrial.

■ 2. The visual observation of Leach through the windshield was not a search. The VIN was in full view and no warrant was necessary. United States v. Holgerson, 424 F.2d 1130 (10th Cir. 1970). The fruits of the observation were not placed before the jury, only the number in plain view which Leach saw through the windshield. We find United States v. Greer, 297 F.Supp. 1265 (N.D.Miss., 1965) inapposite. There the officers got permission from the wife to search the car, received the keys from her, unlocked the car and made an inside search of the car. There was no entry of the car here.

■ 3. Wagner claims that his second conversation with Leach after the *Miranda* warning was "subtly coercive police questioning:" Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). We cannot agree. All of the facts here show that the consent to search and the second conversation were entirely voluntary as the trial court found. Since the evidence must be viewed in the light most favorable to the Government, United States v. Twilligear, 460 F.2d 79, 81–82 (10th Cir. 1972), we cannot say on the "totality of the circumstances" that the statement was not voluntary. United States v. Miles, 449 F.2d 1272 (10th Cir. 1971). The second statement here was not "the poisonous fruit" of the first interrogation. Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963).

■ 4. We do not find the reference to Wagner's "testimony" to be reversible error as an impermissible comment on the refusal of the defendant to testify.

Knowles v. United States, 224 F.2d 168 (10th Cir. 1955); United States v. Noland, 416 F.2d 588 (10th Cir. 1969). The prosecutor had been talking about Leach's testimony concerning Wagner's statements to him. The "his testimony" phrase referred to Leach, not Wagner. While we recognize the slight ambiguity, the error is at most harmless. It was merely a faulty grammatical reference made during a summation of the evidence. It certainly was not intentional. Furthermore, the Government cured the mistake in its closing remarks, and the court gave full instructions which in two instances warned the jury that there was no presumption of guilt or any inference of it to be drawn from the failure of Wagner to testify. The judgment is, therefore,

Affirmed.