**William Webster WEAVER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 23764.

United States Court of Appeals
Fifth Circuit.

March 24, 1967.

Darrell F. Holmes, Jr., Macon, Ga., for appellant.

F. D. Hand, Jr., Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Weaver appeals from his conviction for violation of 18 U.S.C. § 2313 relative to sale or receipt of stolen vehicles. He asserts as grounds for reversal: the evidence was insufficient to support a verdict of guilty, the court erred in allowing testimony of any witnesses against him inasmuch as the entire case allegedly originated from an illegal search and seizure by local county police officials, the court failed to grant defendant's motion to suppress all evidence so obtained, and the court refused to allow a Government witness to answer a question propounded by the defense relative to whether the witness wanted to see the defendant convicted, when no objection was made by the United States Attorney.

Weaver was indicted on two counts. He was acquitted on Count 1 which charged a violation of 18 U.S.C. § 2312 pertaining to transportation in interstate commerce of stolen vehicles, but was found guilty on Count 2 which charged:

"That, on or about December 7, 1964, in the Atlanta Division of the Northern District of Georgia, WILLIAM WEBSTER WEAVER did unlawfully, wilfully and knowingly receive, conceal, store, barter, sell, and dispose of a certain stolen motor vehicle, to wit, a blue 1960 Cadillac four-door, which said vehicle was then and there moving as, constituting, and a part of interstate commerce from Oxford, in the State of Alabama, to Clayton County, in the State of Georgia, then and there knowing said vehicle to have been stolen, in violation of Section 2313, Title 18 U.S.C."

Weaver admitted he came into possession of the vehicle on December 7, 1964, in Georgia, the same day it was stolen from Oxford, Alabama, but denied knowledge that it was stolen.

On June 3, 1965, Weaver, while playing a slot machine in a business establishment at Pass Christian, Mississippi, was arrested on suspicion by Officer Koolsbergen, the Assistant Police Chief of that town. The incident which caused suspicion, according to the testimony of the arresting officer, was the position of the car which Weaver had been driving. It was backed up into a side of a building causing the license tag to be hidden from view. Koolsbergen also testified that Weaver looked suspicious. Weaver stated that at the time of the arrest he was using a "device" to "beat the slot machines." By authority of the local Mayor a search of the car was made. Burglary tools were found in the car and seized. Search, seizure and arrest were made without warrants. Weaver was held at Pass Christian and later was taken to the County Jail at Gulfport, Mississippi. He was booked with possession of burglary tools. FBI Agent Louderman, who had been contacted by the Pass Christian police, interviewed Weaver at the County Jail at Gulfport, Mississippi, after advising him of his

constitutional rights. According to Louderman's testimony, this interview occurred on June 4, 1965, the day following the arrest. Louderman testified that Weaver told him he had purchased the car from a Mr. Thompson of Thompson Wholesale Car Company in Cedartown, Georgia. Weaver voluntarily showed Agent Louderman a duplicate Georgia registration number for the car. During the interview Louderman informed him that he wanted to make a routine check of the car. There is no evidence that Weaver objected to this.

Weaver's statements before trial conflicted as to the manner of acquiring the vehicle. He testified that he had purchased the car in Atlanta, Georgia, from a person who represented himself to be a Mr. Thompson of Thompson Wholesale Car Company in Cedartown, Georgia, and so told Agent Louderman. However, no bill of sale was ever produced by Weaver and no Thompson Wholesale Car Company was found to exist in Cedartown, Georgia. Weaver testified that the bill of sale had been in the possession of an attorney whom he had formerly employed, who was out of town at the time of the trial and in whose office a fire had occurred.

Agent Louderman examined the public identification number of the car, which appears on a plastic sheet on the doorpost, while the car door was open. The door had been opened by local police, not by Louderman. The identification number observed by Louderman in his visual inspection of the car was the identical number listed on the duplicate Georgia registration certificate shown to him by Weaver during the interview.

Two months later Weaver was arrested in Clayton County, Georgia, by local police accompanied by FBI Agent Galvin. Search and arrest warrants were served on Weaver. After advising Weaver of his constitutional rights, Agent Galvin questioned him and was told that Weaver had won the vehicle from someone whose name he could not recall. While Weaver was in custody of the county police, Agent Galvin obtained an impression of the confidential number of the vehicle, which number appears immediately adjacent to the radiator. The confidential number differed from the public identification number on the doorpost. The two numbers should be the same. Weaver was indicted in this case.

■■ Appellant argues that the evidence introduced was insufficient to support the verdict and that the court erred in overruling his motion for acquittal. The effect of the testimony of defendant Weaver's witnesses was that Weaver made no effort to *conceal*, sell or dispose of the stolen vehicle, three of the prohibitions contained in 18 U.S.C. § 2313. While the various illegal acts are listed in the conjunctive in the indictment, the statute lists them in the disjunctive.[1] The effect of the statute is that the commission of any one of the prohibited acts constitutes a crime. There was substantial evidence that Weaver *received* the vehicle with knowledge that it was stolen, an act also proscribed by the statute, on which the jury reasonably could have based its verdict and upon which the court could have relied in denying the motion for acquittal. To illustrate, there is the inconsistency in Weaver's story to the two FBI agents as to the identity of the person from whom he received the vehicle, whether he purchased or won it, his failure to produce a bill of sale for the vehicle and his dubious explanation for its nonproduction, the discrepancy between the public and the confidential numbers on the vehicle, the evidence that the public identification number on the vehicle was removed from a vehicle belonging to another person, and possession by Weaver

1. It reads as follows:
   "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

of the vehicle on the same day on which it was stolen from another state.

■ This Court has consistently held that on motion for judgment of acquittal "The test is whether, viewing the evidence presented most favorable to the Government, a reasonable-minded jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." Stephens v. United States, 5 Cir., 1965, 354 F.2d 999. See also Riggs v. United States, 5 Cir., 1960, 280 F.2d 949 and Lambert v. United States, 5 Cir., 1958, 261 F.2d 799. Applying this standard to the evidence presented here, we conclude that the court correctly denied the motion for acquittal. This, of course, presupposes that the evidence was legally admissible which brings us to the second point of error urged by Weaver.

■ It is contended by Weaver that the Government's interest in the case began when he was arrested in Mississippi; specifically, when FBI Agent Louderman was allowed to look at the public identification number on the doorpost of the car when local police illegally opened the door without a warrant; that as a result of that illegal act, all the evidence flowing therefrom should have been excluded by the trial court; that without this evidence there would have been no Government case. The basis of Weaver's argument is that all evidence should have been suppressed under the authority of Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), which denounced the "Silver-Platter" evidentiary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

Admittedly, the Government's case was initiated in Mississippi. FBI Agents Louderman and Galvin confirmed this. The public identification number obtained by Agent Louderman was furnished to Agent Galvin of the Atlanta Office of the FBI. Galvin learned that the number belonged to another vehicle. As a result of this investigation, arrest and search warrants were made available to Clayton County, Georgia, police when the vehicle appeared in that vicinity. Weaver was arrested and his vehicle seized and examined for its confidential identification number. It was determined that it was the same vehicle which was stolen from Oxford, Alabama. The fact that the investigation which culminated in Weaver's indictment was initiated in Mississippi does not, however, compel the conclusion that the evidence furnished by Louderman was illegally obtained. This is so because Louderman's knowledge of the public identification number of the vehicle came voluntarily from Weaver when he exhibited to Louderman his duplicate Georgia registration papers showing the vehicle number. Louderman's subsequent visual routine check of the vehicle revealed no new evidence for the number which he observed was identical to the number Weaver had already shown him. The lawful acquisition of this information by Agent Louderman from Weaver vitiates any suggestion of the "Silver-Platter" method being used to obtain the information.

In Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319 (1920), the Supreme Court although holding invalid the issuance of a subpoena requiring production of documents, the existence of which became known by federal agents through an illegal search and seizure, nevertheless said that " * * * *this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, * * *.*" (251 U.S. at 392, 40 S.Ct. at 183.) (Emphasis supplied.) This independent-source theory has evolved to become a well-recognized exception to the general rule of inadmissibility of evidence obtained from an illegal search or seizure. In Gibson v. United States, 1945, 80 U.S.App.D.C. 81, 149 F.2d 381, evidence relative to the first count which charged violation of the marijuana tax law was obtained in violation of defendant's constitutional rights against un-

reasonable searches and seizures. However, while defendant was under illegal arrest he volunteered evidence which supported conviction on a second count. The Court in upholding the second count held that rejection was not required of the volunteered evidence which added nothing to self-incriminatory facts shown on the second count. In United States v. Giglio, 2 Cir., 1959, 263 F.2d 410, the Court held that where records lawfully obtained contained information from which further information was later obtained, there was no basis for suppression merely because the same information might also have been found in suppressed records. Similarly, in Burke v. United States, 1 Cir., 1964, 328 F.2d 399, cert. den. 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 52 (1964), the trial court found that an illegal search had occurred but refused to suppress the evidence because the identical information which the search revealed was already known to the Government. The First Circuit in affirming the judgment of the district court said: "We agree that knowledge of information gained from an independent source does not become unusable merely because the same information is subsequently discovered during an illegal search," citing *Silverthorne*, supra. And finally, in this Circuit, in Manuel v. United States, 5 Cir., 1966, 355 F.2d 344, we found no error in the district court's refusal to suppress handwriting specimens which were compared with a forged signature on a Treasury check and which had been taken from a defendant after he had been unlawfully booked, where the defendant voluntarily furnished specimens after being warned of his constitutional rights.

Because of our ruling that the evidence sought to be suppressed was obtained from an independent, lawful source, it is unnecessary for us to decide whether the visual search by Louderman was illegal or not.[2] However, the method which Agent Louderman used to obtain the public identification number of the vehicle was nothing more than a routine questioning of a person arrested from out of the state. His subsequent checking of the number of the vehicle was mere routine. In this highly motorized age with millions of vehicles traversing the nation's highways and the mounting number of automobile thefts and related crimes, it would tax the imagination if we were to consider under these circumstances that a visual inspection by an FBI agent of a car identification number constituted a search, much less an illegal search. The Fourth Amendment constitutional prohibition is against *unreasonable* searches and seizures. Cf. Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (decided February 20, 1967).

■ We need barely mention the last assignment of error urged by Weaver— that the court prevented the Pass Christian, Mississippi, arresting officer from answering a question despite the fact that the Government had made no objection. The court considered improper the question of whether the arresting officer was interested in seeing Weaver convicted. It is not only the trial judge's right but his duty to see that only proper and relevant evidence was admitted. The question was neither proper nor relevant.

Affirmed.

---

**2.** To observe what is patent and obvious and open to view is not considered a search. Miller v. United States, 5 Cir.,

1966, 356 F.2d 63; United States v. Williams, 6 Cir., 1963, 314 F.2d 795.