**Michael PASTERCHIK, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**Nos. 21645–A, 21645–B.**

United States Court of Appeals
Ninth Circuit.

Sept. 20, 1968.

Rehearing Denied Dec. 23, 1968.

Richard E. Weger (argued), San Jose, Cal., for appellant.

Michael L. Morehouse (argued), Asst. U. S. Atty., Sidney I. Lezak, U. S. Atty., Portland, Or., for appellee.

Before HAMLIN, DUNIWAY and ELY, Circuit Judges.

ELY, Circuit Judge:

This is a consolidated appeal. In No. 21645–A, appellant Michael Pasterchik was convicted of violating 18 U.S.C. § 2312, which proscribes the transportation of a stolen motor vehicle in interstate commerce. In No. 21645–B, the indictment charged two offenses, and Pasterchik was convicted of both. Count I alleged the violation of 15 U.S.C. § 902 (e), the transportation of a firearm in interstate commerce by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year. Count II charged Pasterchik with having transported a stolen firearm in interstate commerce, a violation of 15 U.S.C. § 902(g). He received identical, concurrent sentences for his conviction under counts I and II of the indictment in No. 21645–B.

Here Pasterchik first contends that his conviction for transportation of the stolen motor vehicle cannot stand because it was obtained by use of the fruits of an unlawful search. Secondly, he urges that there is insufficient evidence to support the firearm convictions.

## THE INTERSTATE TRANSPORTATION OF THE STOLEN CAR— No. 21645–A

In the latter part of April 1966, Pasterchik registered as "Dr. Michael Pasterchik" at a motor hotel in Portland, Oregon. After staying at the hotel for several weeks, he moved into the home of a Mrs. Fortney in Lake Oswego, Oregon. There, Pasterchik slept in an attic room, but he kept most of his personal belongings in a downstairs bedroom occupied by Mrs. Fortney's daughter.

When, and after, Pasterchik arrived at the hotel, he drove a 1966 Thunderbird convertible automobile. Both during and after his stay at the hotel, Pasterchik conversed frequently with a bartender in the hotel lounge. The bartender had observed that the vehicle had carried the "Water Wonderland" license plates of the State of Michigan, but that soon thereafter, those plates had been replaced with plates from the State of Illinois.

When the bartender questioned Pasterchik about this change, Pasterchik explained that there was a tax lien on the car, that he had shipped the car back East, apparently in order to discharge the lien, that several days later his attorney had returned the car to him, and that when the car was thus returned to him, it bore the Illinois plates.

Suspicious of Pasterchik's explanation, the bartender called the F.B.I. on June 4, 1966, expressing to an Agent Taylor his belief that the car might be stolen. The bartender furnished Agent Taylor with what he believed to be the numbers of both the Michigan and Illinois plates, and Taylor undertook a check on those numbers. In fact, however, the bartender had transposed numbers in the Illinois plate number, and the information as to that number was therefore mistaken. The Detroit office of the F.B.I. reported that the identified Michigan plates had been stolen from an automobile dealer in that state, and the Springfield office reported that the Illinois license number supplied them had been issued to a man of good reputation and had not been reported stolen. On June 5th, the Denver office of the F.B.I. advised that Pasterchik was wanted in Phoenix, Arizona, for the theft of a 1966 Ford Mustang, and on the following day, Agent Taylor obtained from the District of Arizona a warrant for Pasterchik's arrest for unlawful flight to avoid prosecution on the Phoenix auto-theft charge.

Armed with this warrant, F.B.I. agents Taylor and Himmelsbach went to the Fortney residence in Lake Oswego at about 3 p. m. on June 6th. Pasterchik answered the agents' knock on the door and was immediately placed under arrest on the Arizona process. The agents permitted Pasterchik to dress in the downstairs bedroom where he kept his personal effects, but the agents made no effort to conduct a search at that time. When Pasterchik had finished dressing, the agents escorted him to the United States Court House where he was arraigned and incarcerated.

At 7 p. m. that evening, approximately four hours after the arrest, Taylor and Himmelsbach returned to the Fortney residence and began a search of Pasterchik's car and of his belongings in the house. They obtained no search warrant; rather, they sought and obtained Mrs. Fortney's written consent to both searches. Their search of the downstairs bedroom disclosed the following: (1) A Michigan license plate registration for a 1966 Thunderbird, No. 368D19, assigned to Dr. Joseph Roach; (2) an automobile dealer purchase order for a 1966 Thunderbird made out to Dr. Joseph Roach, bearing the license number 368D19 and the automobile serial number 6Y85Z130427; (3) an Ohio driver's license bearing the name of Dr. Joseph Roach; (4) five blank Michigan license registration cards; (5) a blank Michigan certificate of registration; and (6) a Shell Oil Company credit card in the name of Kregar Pickwick. Each of these items was introduced into evidence over Pasterchik's objection.

Following the search of the bedroom, Mrs. Fortney took the keys to the Thunderbird off a dresser in the bedroom, where Pasterchik had left them, and she proceeded, accompanied by the agents, to the garage where the vehicle was parked. She opened the trunk of the car for the agents, and the agents found in the trunk two Michigan license plates with the number 368D19.[1] These license plates, which were the ones stolen from the Michigan auto dealer, were also introduced into evidence. The agents ascertained the engine and serial [2] num-

---

1. In the trunk the agents also found a second Illinois license plate matching the single plate which was then displayed on the rear of the 1966 Thunderbird. This Illinois license plate, along with the one displayed on the automobile, were returned to the Hertz Rent-A-Car Corporation along with the Thunderbird prior to the trial, and the Illinois license plates were therefore not introduced into evidence.

2. The serial number, 6Y85Z130427, was used at the trial to identify the Thun-

bers of the automobile by lifting the hood of the car and by opening and looking inside the left front door, which, at that time, was not locked.[3] Finally, the agents recorded the number of the Illinois license plate which was then openly attached to the car. It was established that the automobile belonged to the Hertz Rent-A-Car Corporation, Chicago, Illinois.

Agent Taylor testified that when he and Agent Himmelsbach returned to the Fortney home to conduct the searches, he had no knowledge that the Thunderbird had been stolen but that he suspected that it was. Similarly, Himmelsbach at that time had no knowledge that the automobile was stolen.

At trial the Government took the position that the searches of both the house and the car were incident to the valid arrest which had occurred four hours earlier. Under the facts of this case, that position is manifestly untenable,[4] and the Government has now abandoned it. The ground upon which the searches are now sought to be justified is that Mrs. Fortney, the owner of the premises, consented to them.

■ We agree with the Government that Pasterchik may not properly complain of the search of the downstairs bedroom in Mrs. Fortney's home. He did not dwell there, and Mrs. Fortney, as the owner, was fully empowered to consent to the search of that portion of her home. "[T]he rights of the owner of personal property are not violated where the property is observed during a search made

with the consent of another who has an equal and independent right of access to the place searched." Corngold v. United States, 367 F.2d 1, 7 (9th Cir. 1966) (dicta); accord, Nelson v. People of State of California, 346 F.2d 73, 77 (9th Cir.), cert. denied, 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965), and cases cited therein.

■ The search of the automobile is on another footing. It is clear that Mrs. Fortney did not have a right of access to the automobile that was either equal to or independent of appellant's. Nor did he give her "such complete and unrestricted freedom over his property that he will be held to have accepted the risk that the person will consent to a search * * *." Corngold v. United States, 367 F.2d at 7. We conclude, therefore, that the agents' search of the automobile was improper.

Under the facts of this case, however, we hold that the error in the introduction of the Michigan license plates was harmless beyond a reasonable doubt. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Appellant was convicted for transporting a stolen motor vehicle in interstate commerce. In order to establish the elements of that offense, the prosecution had the burden of proving that the vehicle was taken without the consent of the owner and that Pasterchik transported the vehicle in interstate commerce with knowledge that it was stolen. The Government's proof in these respects was abundant, and the fact that the trunk of the car contained Michigan license plates

derbird as belonging to the Hertz Rent-A-Car Corporation. This same serial number appeared on the apparently false automobile dealer purchase order for a 1966 Thunderbird made out to Dr. Joseph Roach, which was found by the agents in their search of Pasterchik's effects in Mrs. Fortney's home.

3. Mrs. Fortney testified that she had unlocked this door before the F.B.I. agents arrived to search Pasterchik's possessions.

4. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964);

Barnett v. United States, 384 F.2d 848 (5th Cir. 1967); United States v. Nikrasch, 367 F.2d 740 (7th Cir. 1966); Westover v. United States, 342 F.2d 684 (9th Cir. 1965), rev'd sub nom on other grounds, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Cain, 332 F.2d 999 (6th Cir. 1964); Sisk v. Lane, 331 F.2d 235 (7th Cir. 1964), petition for cert. dismissed, 380 U.S. 959, 85 S.Ct. 1100, 13 L.Ed.2d 977 (1965).

registered to another vehicle had little, if any, bearing on the elements of the particular offense in question.

■ As noted previously the agents also obtained the engine and serial numbers of the Thunderbird by raising the hood of the car and by opening the left front door. Under similar circumstances, our court has previously held that "even if the mere opening of the door to look at the number was a search, it was a reasonable one." Cotton v. United States, 371 F.2d 385, 393 (9th Cir. 1967). Furthermore, we wrote that "when a policeman or a federal agent having jurisdiction has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number, or open the hood to check the motor number, and * * * he need not obtain a warrant before doing so in a case where the car is already otherwise lawfully available to him."[5] Cotton v. United States, 371 F.2d at 394. In view of the various documents apparently relating to the Thunderbird which the agents had lawfully obtained in the search of the Fortney home, it is beyond doubt that the agents had "legitimate reason to identity" the Thunderbird automobile. Therefore, under all the facts of this particular case, the Government's use of the serial number to identify the car as the property of Hertz Rent-A-Car Corporation was not improper.

## THE FIREARM CONVICTIONS— No. 21645–B

In April 1966, Pasterchik spent several days as a guest at the Donner Trail Ranch in Verdi, Nevada. There he met Margaret Marcewicz and her son, Anthony, and during his stay at the ranch, Pasterchik and Anthony became very friendly. In the first part of April 1966, Anthony had purchased a .22 caliber pistol at the Verdi Gun Shop. During the morning of his third day at the ranch, Pasterchik was preparing to take a walk with Mrs. Marcewicz and two other women. He approached Anthony at that time and asked if he could borrow Anthony's pistol "to do some shooting and let the ladies shoot a little." Anthony said "O.K.," and Pasterchik replied that he would "give it back right after the walk." Anthony testified that he then "hinted around" that he wanted the gun returned after the walk, but no further evidence was offered as to what he said to convey such a desire, now said by the Government to have imposed a specific, unequivocal condition upon the lending. Anthony testified that Pasterchik and the women returned from their walk in time for lunch, but no evidence was offered of a demand for the gun by Anthony at that time. He related that he did not see Pasterchik at dinner that night because the dining room at the ranch was closed. Pasterchik left the ranch the following morning without having returned the pistol. Anthony apparently had no advance knowledge of Pasterchik's intention to leave the ranch at that time.

Mrs. Fortney testified that shortly after she met Pasterchik in Portland, Oregon, in May 1966, they were driving in his automobile when Pasterchik reached into the glove compartment of the car, removed a small firearm, and, referring to the occupants of the adjacent automobile, said to Mrs. Fortney, "This is how I take care of them." Some two weeks later, shortly after he had moved into Mrs. Fortney's home, Pasterchik pointed to his shaving kit and remarked, "Watch that. It is loaded." Subsequent examination of the shaving kit by Mrs. Fortney revealed that it contained a pistol similar to that originally purchased by Anthony Marcewicz. More than a month later, after Pasterchik's arrest by the F.B.I. agents on June 6th

5. The court continued: "We express no opinion as to whether he can break into a car without a warrant if the car be locked." Cotton v. United States, 371 F.2d at 394. Here, as previously noted, the car was not locked, and Mrs. Fortney had, insofar as she was able to do so, given the agents free access to the automobile.

in connection with the stolen automobile, Mrs. Fortney removed the pistol from the shaving kit and gave it to one of her friends, who, in turn, handed it over to Agent Taylor. Anthony Marcewicz identified the pistol as belonging to him.

An indictment on two counts involving Pasterchik's transportation of the firearm in interstate commerce was returned by the grand jury on October 7, 1966. Pasterchik now contends that this indictment should have been dismissed by the trial court because there was unnecessary delay in the presentation of the charge to the grand jury. Fed.R. Crim.P. 48(b). This contention is based on the fact that Pasterchik had originally been arrested on June 6, 1966, and had been indicted for interstate transportation of a motor vehicle, discussed supra, on June 13, 1966. Pasterchik's trial on the latter charge began on November 8, 1966, and his trial on the firearm charges began on December 13, 1966. He was held in custody throughout this period of time. The District Court, in denying Pasterchik's motion to dismiss, found that the delay had not been prejudicial to the defendant and that the Government had "used due diligence in presenting to the Grand Jury the case involved * * *." We will not disturb these conclusions. See Nickens v. United States, 116 U.S. App.D.C. 338, 323 F.2d 808 (1963), and cases cited therein. Additionally, we note that the indictment was returned within the allowable statutory period, 18 U.S.C. § 3282, and that there was clearly no unreasonable delay in bringing Pasterchik to trial following the indictment.

As to claims of insufficient evidence, we are, of course, required to review them in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Byrnes v. United States, 327 F.2d 825, 830 (9th Cir.), cert. denied, 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739 (1964). In that light, the evidence is sufficient to sustain Pasterchik's conviction, under count I, for the transportation in interstate commerce of a firearm by a person who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year. 15 U.S.C. § 902(e). Pasterchik's principal contention as to his conviction of that offense is that there was insufficient evidence to prove the prior felony conviction charged in the indictment. This fact was a necessary element of the case against Pasterchik on this count, but the *only* evidence introduced by the Government for proof of a prior conviction was an exemplified copy of a Montana judgment of conviction, in 1950, of one "Michael Pasterchik." This copy of the 1950 judgment of conviction was admitted without objection, and Pasterchik introduced no evidence relating to the 1950 judgment of the Montana court.

The various jurisdictions in the United States are divided upon the issue of whether identity of name is sufficient prima facie proof of identity of person. See Annotation, 11 A.L.R.2d 870, §§ 7 & 9 (1948). In two cases dealing with this specific crime the Tenth Circuit has held that the Government does not "discharge its total burden of proving a prior conviction by the introduction of court records pertaining to a person of same or similar name. * * *" Matula v. United States, 327 F.2d 337, 338 (10th Cir. 1964); Gravatt v. United States, 260 F. 2d 498 (10th Cir. 1958). While we think that the prosecution was somewhat careless in its failure to offer more convincing evidence, our court has previously held, in closely analogous cases, that "identity of a name is sufficient to establish the identity of the person in the absence of contradictory evidence." Bayless v. United States, 381 F.2d 67, 74 (9th Cir. 1967) (involving proof of prior conviction as element of crime of escape); Chung Young Chew v. Boyd, 309 F.2d 857 (9th Cir. 1962) (involving proof of prior felony conviction as ground for deportation); see Smith v. United States, 92 F.2d 460 (9th Cir. 1937) (involving removal of a defendant to another district to answer indictment there). A similar approach has also been taken in the Fifth Circuit. United States v.

Rodriguez, 195 F.Supp. 513 (S.D.Tex. 1960), aff'd, 292 F.2d 709 (5th Cir. 1961) (involving proof of prior conviction for marijuana law violation as element of crime of failure to register when crossing border). We hold, therefore, especially because there was no objection to the introduction of the Montana judgment, that there was sufficient evidence to support the conclusion that Pasterchik had been previously "convicted of a crime punishable by imprisonment for a term exceeding one year * * *." 15 U.S.C. § 902(e).

■ Pasterchik also contends that there was insufficient evidence to establish, under count I, a willful and knowing interstate transportation of a firearm. The evidence, already reviewed, amply supports the conclusion that Pasterchik did, in fact, accomplish such transportation. Cf. Isaacs v. United States, 283 F.2d 587 (10th Cir. 1960).

■ Finally, in his challenge to the conviction under count II of the indictment in No. 21645–B, Pasterchik vigorously contends that the evidence was manifestly insufficient to prove that he had intended to steal, and had stolen, the firearm at the time of the interstate transportation. The contention has merit, but we need not discuss it. Where, as here, sentences imposed under more than one count of an indictment are identical and are ordered to be served concurrently, affirmance on one count supports affirmance of the other convictions for which the concurrent sentences are imposed.[6] Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692 (1929); Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173 (1919); Mendez v. United States, 349 F. 2d 650 (9th Cir. 1965), cert. denied, 384 U.S. 1015, 86 S.Ct. 1952, 16 L.Ed.2d 1036

(1966); Stein v. United States, 337 F.2d 14 (9th Cir. 1964), cert. denied, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965).

Affirmed.

6. The Supreme Court has recently expanded the scope of habeas corpus relief. See Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Carafas v. La Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). See also Imbler v. Oliver, 397 F.2d 277 (9th Cir. 1968). It has not yet, however,

abandoned the concurrent sentence principle which has been applied in cases of direct appeal, as here, and in habeas corpus proceedings, such as Lee v. Swope, 225 F.2d 674 (9th Cir. 1955), cert. denied, 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839 (1956).