**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James WILLIAMS, Defendant-Appellant.**

**No. 26792.**

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1970.

Rehearing Denied Dec. 15, 1970.

Robert A. White, Roy Nolen, Houston, Tex. (Ct. Apptd.), for appellant.

Ronald J. Blask, James R. Gough, Asst. U. S. Attys., Morton L. Susman, U. S. Atty., Joel P. Kay, Asst. U. S. Atty., Houston, Tex., for appellee.

Before JOHN R. BROWN, Chief Judge, GODBOLD, Circuit Judge, and CABOT, District Judge.

CABOT, District Judge:

This is an appeal by the appellant, James Williams, from his conviction of transporting a stolen motor vehicle in interstate commerce from California to Texas, knowing the same to have been stolen, all in violation of 18 U.S.C. § 2312, the Dyer Act.

The facts indicate that appellant was originally indicted in the Laredo Division of the Southern District of Texas under an assumed name for violation of the above statute. His appointed counsel moved to suppress evidence taken pursuant to an alleged unlawful search and seizure. After a hearing on the motion, but prior to the lower court's decision, the case was transferred to the Houston Division of the Southern District of Texas, and then, when it was later discovered that the appellant's real name was James Williams, he was re-indicted. That court then issued an order on the motion to suppress which relied on the transcript of testimony taken at the prior hearing. Since the issue before this court concerns the propriety of the lower court's order on the motion to suppress, reference to testimony taken at the hearing on the motion is necessary. The testimony revealed that appellant and two others were seen by a customs agent driving back and forth across the border from Mexico over a period of time in the subject car, a 1967 yellow Chevrolet Camaro. Since they looked suspicious the customs agent took the license number of the vehicle, which when checked was found to belong not to a 1967 Chevrolet, but rather to a 1953 Ford. By that time the car was already past the border point and the customs agent requested the Laredo police department to be on the lookout for the car and to keep him posted of its whereabouts. Subsequent to this, information was given to the Laredo police that the appellant and others seen with him in this car were attempting to sell typewriters door-to-door in the city. Thus a "lookout" was sent over the airways to the police officers who were instructed not to stop the vehicle inasmuch as there was no cause, but rather to keep it under surveillance. Soon thereafter the arresting officer in this case noticed the vehicle and followed it for about ten or eleven blocks until it took a right turn without giving a proper signal, whereupon the vehicle was signaled over and the driver, the defendant herein, was arrested for violation of the traffic laws. The officer testified at the hearing on the motion to suppress that his sole purpose in following the vehicle was to wait until the driver violated a traffic ordinance so he would have reason for arresting him. The appellant, a non-resident, was taken to the Laredo police department, ostensibly to post a bond for the traffic charge. However, once there he was interrogated and was told to place the contents of his pockets on a table. In his pocket was a key to a locker at a Greyhound bus station. The police took the key and emptied the contents of the bus station locker, bringing them

back to the police station. There they discovered a certificate of title from California for the vehicle, as well as some drivers' licenses. Since the automobile had a Texas license plate, and since it was known that the plate belonged to a 1953 Ford, the police were suspicious that it might be stolen and called the FBI. The agent, who did not testify at the hearing on the motion to suppress, came over to the police station, saw the appellant, saw the vehicle, and apparently, although there is no direct evidence of this, he opened the door of the vehicle in order to record the identification number from a plate therein. He then checked on the number and it was determined that the car was stolen from California.

The lower court concluded that the arrest was in fact a subterfuge based as it was upon the minor traffic violation, and suppressed the documents produced from the search of the defendant, his clothing, and his luggage. The court, however, did not suppress the identification of the vehicle.

In its memorandum order appealed from, the court concluded that the agent in obtaining the identification number did not conduct a search. The court stated:

> The identification of a vehicle is not a search thereof and the law does not so protect it. I consider this little more than looking at the license number. While it may be a mere play on words, if this be considered a "search" of the vehicle, it was not an unreasonable one and did not violate any right of the defendant.

At the trial of this case, two witnesses from California testified that the vehicle was stolen. One witness from Laredo testified that the license plate of the vehicle, which belonged to a 1953 Ford was from his car, which he had abandoned at the end of a dead end street in Laredo. The defendant's niece then testified at length and gave quite damaging testimony, placing the appellant in the vehicle in Laredo around Thanksgiv-

ing or Christmas of 1967, and further testified that the vehicle had California plates, but that the appellant took them off, threw them in the trash pile, and replaced them with the Texas license plate. She took the FBI agent who interviewed her to the trash pile where the California license plate was found. There was also evidence to establish that this was the license plate of the stolen vehicle. She further testified on cross-examination that the FBI agent came to her. Finally, the FBI agent testified and his testimony was limited to merely stating that he went to the Laredo police department, saw the appellant, saw the 1967 yellow Camaro, and that he recovered from the vehicle its identification number. The jury returned a verdict of guilty, and the appellant was sentenced to a term of five years. This appeal followed.

The sole issue before this court is whether the lower court erred in refusing to suppress the identification of the vehicle and the fruit of the alleged poisonous tree—the testimony of the appellant's niece.

The law is well settled that the constitutional proscription against unreasonable searches and seizures extends to automobiles, since they, like houses, legitimately serve as repositories for personal effects and belongings. United States v. Graham, 6 Cir. 1968, 391 F.2d 439. The application of the Fourth Amendment to vehicles is, of course, subject to certain limitations arising because of their mobility. Preston v. United States, 1964, 376 U.S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777.

Appellant, in support of his argument that the conduct of the agent constituted an unreasonable search, relies upon the Tenth Circuit in Simpson v. United States, 10 Cir. 1965, 346 F.2d 291, where that court, en banc, held that recording an identification number of a vehicle constitutes a search and thus is entitled to the protection afforded by the Fourth Amendment.

██ This circuit, however, has rejected that view and has instead aligned

itself with the position adopted by the Sixth Circuit in United States v. Graham, supra, and by the Ninth Circuit in Cotton v. United States, 9 Cir. 1967, 371 F.2d 385. See, United States v. Johnson, 5 Cir. 1969, 413 F.2d 1396. In *Johnson*, recently affirmed en banc on rehearing, United States v. Johnson, 5 Cir. 1970, 431 F.2d 441, the court held " * * * that where there is a legitimate reason to do so, the mere checking of the serial number of an automobile in order more positively to identify it, is not a search within the prohibitions of the Fourth Amendment." Moreover, the court alternatively concluded that if it is a search, it is a reasonable one where the searcher has reliable information to believe that a vehicle of like kind has been stolen. *Johnson*, which controls the disposition of this case, compels us to conclude that the recordation of the identification number did not constitute a search. Moreover, even if it was a search under the circumstances here existing, it was a reasonable one for, as the lower court noted, the agent acted under circumstances which were sufficient to induce one to reasonably believe that the vehicle was stolen. This finding is entitled to its full weight as there is no evidence to suggest that it is clearly erroneous.

Appellant also asserts that the testimony of his niece should be suppressed as part of the "fruits of the poisonous tree." However, since we hold there was in fact no poisonous tree, there can be no fruits thereof to be suppressed. The testimony of the niece was not otherwise objected to and was, therefore, properly admitted.

Accordingly, the judgment appealed from is affirmed.

GODBOLD, Circuit Judge (dissenting):

In my opinion this case has to be remanded for additional findings of fact.

The validity of the District Court's order denying suppression of the identification number of the car depends upon two assumptions by that court: (1) that the number was obtained by the FBI agent from the car itself by a *Johnson*-type doorpost inspection and not from examining the suppressed California registration or from a generalized search of the car; (2) that the "legitimate reason" supporting the presumed doorpost inspection consisted of the FBI agent's having been told by local police that the plates on the car were registered to another car.

We need not guess that the District Judge made these assumptions. He wrote a memorandum opinion which affirmatively reveals that, lacking direct evidence of these vital links because the FBI agent did not testify on the motion to suppress hearing, he assumed them. Now this court, on appeal, disposes of the constitutional issues by accepting the assumptions as correct.

An evidentiary hearing can reveal quickly and easily whether the assumptions were correct. If they were, no harm was done. If they were not, the appellant has been convicted unconstitutionally.

I am, therefore, compelled to dissent.

---

1. United States v. Johnson, 413 F.2d 1396 (5th Cir. 1969), aff'd *en banc*, 431 F.2d 441 [5th Cir. 1970].