[No. 1391-3.    Division Three.    February 16, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. KATHY LOUISE JOHNSON, *Appellant*.

*Paul D. Edmondson* and *Porter, Schwab & Royal,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

MUNSON, C.J.—Kathy Johnson has appealed her conviction of possession of a controlled substance with intent to deliver.

Approximately March 2, 1974, Russell L. Johnson rented a room for a week at the LaCasa Motel in Union Gap, Washington.[1] A few days later the motel owner realized that the room had not been occupied since first rented. Concerned that something may have happened to her renter, she called the sheriff's office on March 5, explained the situation, and requested an officer investigate. Later that day, a deputy sheriff arrived at the motel, checked the room registration, and entered the room, accompanied by the motel owner. The only evidence of occupancy was a jacket and a locked suitcase. The officer returned to the sheriff's office; later he called the motel owner and asked her to reexamine the suitcase and look for any identifying marks or tags. The owner did so; she reported she had removed the suitcase from the closet, taken it to a window, shaken it a bit, and had noticed plastic or plastic bags through a one-eighth inch or larger crack in one side of the suitcase. The same deputy sheriff, accompanied by another deputy, returned to the motel, reentered the room, picked up the suitcase, examined it in the same manner as the motel owner, and made similar observations.

Subsequently, a sergeant of the Yakima County Sheriff's Office called their member of the city-county narcotics squad and talked to him about a possible narcotics case. Thereafter, this officer and a city detective rented a room at the motel in order to conduct surveillance of Mr. Johnson's room. These officers, assigned to a joint city-county narcotics squad, recognized the name of Russell Johnson and were aware of his method of secreting and transporting large quantities of drugs, which included the renting of

---

[1] At that time Russell L. Johnson and the defendant, Kathy Johnson, who had previously been married and divorced, were living apart; they have since remarried.

motel rooms. They were later joined by a federal drug enforcement agent. At no time did any of these officers enter the motel room.

About 8:40 p.m. that same day, Cheryl Betker, defendant's sister, and Rick Wilson, Cheryl's boyfriend, arrived at the motel by automobile, removed the suitcase and jacket from Mr. Johnson's motel room, placed them in the trunk of the car and drove away. It was later learned that they were asked to do this by the defendant. The officers followed Miss Betker's vehicle; Cheryl dropped off Wilson, and drove to the house where defendant was staying. As she stopped the car and got out, she was approached by the surveillance officers who questioned her, and obtained her consent to search the car but not the suitcase. They found the suitcase, examined it, and contend that through a half-inch crack in the suitcase they saw milky plastic bags which appeared to contain red capsules. They took Cheryl, along with the suitcase, to the Yakima County Courthouse for further questioning. Upon arrival, Cheryl telephoned the defendant, who came to the courthouse. The defendant gave a statement, acknowledging that the suitcase and its contents belonged to her. A laboratory examination confirmed that the contents of the suitcase were controlled substances; in fact, the suitcase contained the largest single amount of a controlled substance that had ever been confiscated by the sheriff's office.

The primary issue is whether the trial court erred in allowing the admission of the narcotics, rather than suppressing them as evidence obtained illegally. The fourth amendment to the Constitution of the United States and article 1, section 7 of the Constitution of the State of Washington protect citizens from unreasonable searches and seizures. Any evidence obtained through a constitutionally invalid search is inadmissible. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182, 24 A.L.R. 1426 (1920); *State v. York*, 11 Wn. App. 137, 521 P.2d 950 (1974). Evidence acquired through an independent source, including an illegal search by that source,

however, may be admissible. *Silverthorne Lumber Co. v. United States, supra.*

■ In addition, evidence acquired solely because of information received through an illegal search is admissible only if the means of obtaining the evidence has been "sufficiently distinguishable to be purged of the primary taint [of the illegal search]", rather than obtained through an exploitation of the illegal search. *Wong Sun v. United States,* 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407, 417 (1963). Any evidence obtained solely through the exploitation of information received during an illegal search may not be admitted against a criminal defendant. *Wong Sun v. United States, supra; Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. York, supra.*

The State concedes that the second entry of the motel by the sheriffs constituted an unconstitutional search.[2] They contend, however, that this evidence should be admissible because it was obtained in a valid consensual search of the automobile. We agree that the search of the automobile was pursuant to a valid consent. We disagree that a search of the suitcase found within the trunk of the automobile was within the confines of that consent.[3]

■■ Consent to a search will act as a waiver of the constitutional right against unreasonable searches and seizures, *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965); such consent can be either express or implied, *State v. Duarte,* 4 Wn. App. 825, 484 P.2d 1156 (1971). There must

---

[2]*State v. York, supra.* Under some circumstances the owner of a residence may consent to the search of a guest's suitcase. *State v. Edwards,* 5 Wn. App. 852, 490 P.2d 1337 (1971).

[3]Cheryl Betker's testimony of her "consent to the search" is as follows: "They just told me to get out of the car, and I asked them what they were doing, and they said, I think it was Bansmer said 'I'm Detective Bansmer.' And then I don't remember too much about what they did after that, except they searched the car and took my purse and searched it, and they asked if they could get into the trunk, as they were getting in it, and I said 'I have no reason for you not to;' and they got into the trunk and asked my permission to get into the suitcase, and I had no legal permission to give because it was not my property. I just told them they would have to wait."

be a voluntary consent to constitute a waiver of constitutional right; mere acquiescence or submission to the search is insufficient. *Bumper v. North Carolina*, 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968); *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948). Whether there is a voluntary consent is a question of fact. *State v. Garske*, 74 Wn.2d 901, 447 P.2d 167 (1968); *State v. Murray*, 8 Wn. App. 944, 509 P.2d 1003 (1973), *cert. denied*, 421 U.S. 1004, 44 L. Ed. 2d 673, 95 S. Ct. 2407 (1975).

The burden of proving voluntary consent is upon the State and it must meet that burden with clear and positive evidence. *McNear v. Rhay*, *supra*. In determining whether the consent to the search was voluntary, the court should consider all the circumstances of the case, including the following factors: age, degree of education, intelligence, whether she was advised of her constitutional rights, whether she was detained and the length of such detention, whether there was repeated and prolonged interrogation, and whether there was physical and mental coercion, such as the deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *State v. Shoemaker*, 85 Wn.2d 207, 533 P.2d 123 (1975).

Although this court gives considerable weight to the lower court's determination, if a fundamental constitutional right is at issue, it must make its own independent examination of the record to determine whether there has been a denial of due process. *McNear v. Rhay*, *supra*; *State v. Rye*, 2 Wn. App. 920, 471 P.2d 96 (1970).

We are satisfied that although the car was actually owned by and registered to Russell Johnson's father, defendant had permissive control of the use of the vehicle. She authorized her sister the same access; Cheryl Betker had her own key and used the car whenever she desired. Therefore, any evidence obtained pursuant to a consensual search would be admissible against this defendant. *State v. Bellows*, 72 Wn.2d 264, 432 P.2d 654 (1967); *State v. Smith*, 12 Wn. App. 720, 531 P.2d 843 (1975). We are satisfied that Cheryl Betker did give her voluntary consent to the search

of the vehicle and its trunk. *State v. Lyons,* 76 Wn.2d 343, 458 P.2d 30 (1969); *State v. Murray, supra.* The evidence justified the trial court finding such voluntary consent.

In giving that consent, however, she specifically did not consent to a search of the suitcase. Since this was a warrantless search, the only theory upon which the officers could have seized the suitcase was the "plain-view doctrine." *Coolidge v. New Hampshire, supra.* Under that doctrine, to justify the seizure of the suitcase, the following criteria must be met: (1) a prior justification for the search; (2) the inadvertent finding of the suitcase; and (3) immediately apparent to the officers that the suitcase contained narcotics. *Coolidge v. New Hampshire, supra.*

Here, the first criterion is met. The officers' justification was based upon the voluntary consent given them by Cheryl Betker.

However, the circumstances of this case do not meet the second criterion; they did not inadvertently discover the suitcase. *Cf. State v. Dimmer,* 7 Wn. App. 31, 33-34, 497 P.2d 613 (1972). The deputies were aware the suitcase was in the trunk; based upon information initially conveyed to them, they were relatively certain that the suitcase contained narcotics. The arresting officers were not the officers who conducted the conceded illegal search of the motel room; however, this fact does not cleanse the information gleaned from that illegal search. That information, once brought to the attention of the city-county narcotics unit, precipitated the surveillance and the subsequent conduct.

Having so determined, we do not reach the question of the third criterion.

Judgment reversed.

GREEN and McINTURFF, JJ., concur.

Petition for rehearing denied March 21, 1977.

Review denied by Supreme Court September 29, 1977.