[Nos. 2215-3; 2272-3. Division Three. June 19, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN FREDERIC NICHOLS, ET AL, *Appellants.*

*Richard L. Cease, Public Defender,* and *Richard W. Sanger, Assistant,* for appellants.

*Donald C. Brockett, Prosecuting Attorney,* and *Roger C. Clement, Jr., Deputy,* for respondent.

MUNSON, C.J.—The defendants appeal their convictions of grand larceny contending the court erred in denying their motions to suppress evidence. We affirm.

Shortly after 11 p.m. July 15, 1976, two police units responded to a radio notification of a fight in progress in the alley near East 603 Ermina, Spokane, Washington. The first police unit responded within 3 to 4 minutes of the call and immediately contacted the complainant. The complainant informed the officer a fight had broken out several minutes earlier, six to eight subjects armed with beer bottles and chains were involved, but they had departed a minute or two before the police arrived. Further conversation with the informant disclosed that one of the participants lived at the other end of the alley; the participants had departed in two or three cars, one of which was a 1968 Camaro; and that one of the occupants of the Camaro had advised her that some of the beer bottles involved in the fight were filled with gasoline.

The officers then went to the vicinity of the house and garage where the fight allegedly had occurred and began an investigation. They checked the alley, went to the house, knocked on the door, but received no response. In the yard they saw a green Camaro, which was apparently being remodeled because its panels were different colors. Obviously, this was not the car in which the alleged combatants had departed. Seeking other possible participants, injured people, or people who might be hiding for one reason or another, they continued their investigation, approaching a garage near the house. A side door to the garage was open; without announcing his entry or knocking, one of the officers entered with his flashlight and revolver in hand. Another officer followed him in. They checked the area, found no one in the garage, but they did find another Camaro automobile parked therein. It appeared that this car had been stripped to its frame. The windshield was missing and auto parts and spray paint cans were strewn around the premises. One of the officers stepped up to the car and, using his flashlight, noted the vehicle identification number located on a small, clearly visible metal plaque on the top of the dashboard.

Thereafter, the officers left the vicinity having found neither participant nor injured persons. While on patrol, one of the officers called the identification number of the automobile into the station. It was ultimately ascertained that the Camaro in the garage was a stolen vehicle. Subsequently, a search warrant was issued, the car was seized, and these defendants were arrested for possession of stolen property.

Defendants first contend the entry into the garage was illegal because it was done without a warrant. We disagree. *State v. Sanders,* 8 Wn. App. 306, 310, 506 P.2d 892 (1973), recognized that exigent circumstances, including the emergency rule, can justify exception to the general rule that a warrant is necessary for a valid search. The court, summarizing the emergency rule as set out in *United States v. Goldenstein,* 456 F.2d 1006 (8th Cir. 1972), stated:

> Police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance. In applying the rule, courts must require that the police officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Footnote omitted.) *Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

*State v. Sanders, supra* at 310. *See also Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967), and *People v. Mitchell,* 39 N.Y.2d 173, 347 N.E.2d 607, 383 N.Y.S.2d 246, *cert. denied,* 426 U.S. 953, 49 L. Ed. 2d 1191, 96 S. Ct. 3178 (1976). In *Mitchell* at pages 177–78, the court laid down three basic elements of this exception:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

Here, after receiving the report of an affray involving chains and beer bottles, the officers arrived to find there had been a sudden abandonment and departure. They had no knowledge of whether anyone had been injured and made an immediate investigative search of the area. In conducting this investigation the officers acted reasonably by entering the garage through the open door adjacent to the location of the affray. They had reasonable grounds to believe their assistance was necessary for the protection of life; the purpose of the search was not to arrest or seize evidence; and there was probable cause to associate the garage with the emergency. For this reason, the defendants' contention that it was violative of the prohibition of warrantless searches is not well taken.

The knock–and–announce statute, RCW 10.31.040[1] is applicable to the situation wherein police enter a building either to arrest or to search. *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Campbell,* 15 Wn. App. 98, 547 P.2d 295 (1976); *Coleman v. Reilly,* 8 Wn. App. 684, 508 P.2d 1035 (1973); *State v. Miller,* 7 Wn. App. 414, 499 P.2d 241 (1972); Annot., *What Constitutes Compliance with knock–and–announce rule in search of private premises—State Cases,* 70 A.L.R.3d 217 (1976). Here, the police were investigating a reported affray and entered the garage to determine whether any participants, particularly anyone who had possibly been injured, were hiding therein. Their entry into the garage was not for the purpose of making an arrest or for searching for evidence, but was merely an investigatory procedure. Therefore, the knock–

---

[1]RCW 10.31.040:

"To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance."

and–announce rule is not applicable to this situation. *People v. Gallmon,* 19 N.Y.2d 389, 227 N.E.2d 284, 280 N.Y.S.2d 356 (1967). Defendants' contention of violation of RCW 10.31.040 is without merit.[2]

■ Lastly, defendants contend that the noting of the identification number located on the dashboard of the automobile was an unlawful seizure, not within the plain–view exception to warrantless searches and seizures. The plain–view exception has three essential safeguards as set forth in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), which have been recognized in this state by numerous cases, including *State v. Johnson,* 16 Wn. App. 899, 559 P.2d 1380 (1977); *State v. Keefe,* 13 Wn. App. 829, 537 P.2d 795 (1975); *State v. Proctor,* 12 Wn. App. 274, 529 P.2d 472 (1974); *State v. Dimmer,* 7 Wn. App. 31, 497 P.2d 613 (1972). These safeguards are: (1) a prior justification for the intrusion; (2) an inadvertent discovery of incriminating evidence; and (3) immediate knowledge by the police that they have evidence before them.

■ First, we have held that the intrusion into the garage was justified. Second, the discovery of the Camaro in the garage was inadvertent. The fact of (a) the car's state of disrepair; (b) the miscellaneous automobile parts and paint

---

[2]If the police had entered the garage for the purpose of effecting an arrest and/or to conduct a search, there may have been sufficient compliance with the requirements of the knock–and–announce rule to negate defendants' contention the statute was violated. The knock–and–announce rule is applicable to a police entry of the garage. *United States v. Bustamante–Gamez,* 488 F.2d 4 (9th Cir. 1973); *United States v. Mullin,* 329 F.2d 295 (4th Cir. 1964). In *Bustamante–Gamez,* the court ruled that the officers had sufficiently complied with the statutory knock–and–announce rule. As one officer had knocked at the door of the house, another officer had simultaneously opened the nearby garage door. The court ruled that the knock and announcement at the front door of the house, which was 25 feet from the garage, was a proper announcement for the officer's entry into the garage. The court stated that the simultaneous entry into the garage was justified because of the exigent circumstances. Thus, there was no need for the officers to wait for a refusal of entry. Furthermore, the court stated that the simultaneous entry was not against the purpose of the rule, particularly since the officer's entry into the garage had been nonviolent.

cans; (c) the presence of the other Camaro located in the yard; and (d) the information that the parties involved in the affray had left in several vehicles, including a Camaro, immediately raised the likelihood in the minds of the investigating officers that there was incriminating evidence before them. Third, the identification number was plainly visible; the officers did not rummage about the premises in the hope or expectation of discovering incriminating evidence or contraband. The use of the flashlight does not detract from their right to note the identification number. The police had the right to make a notation with the use of a flashlight in the darkness to see that which they could have seen in the daylight. *State v. Cagle,* 5 Wn. App. 644, 490 P.2d 123 (1971).

The notation of the identification number is distinguishable from *State v. Murray,* 8 Wn. App. 944, 509 P.2d 1003 (1973), *aff'd,* 84 Wn.2d 527, 527 P.2d 1303 (1974). In *Murray,* we found unreasonable the officers' rationale for noting the identification number, *i.e.,* it looked incongruous in that living–room setting. Likewise, in *State v. Keefe, supra,* the officers were authorized to search for a weapon. The officer's action of inserting a piece of paper in the typewriter to obtain impressions of the "e" and "i" letters was held to be unreasonable because he lacked immediate knowledge evidence was before him.

█ We believe that the facts of this case fall more directly under the rationale of *State v. Proctor, supra,* wherein the officers obtained the identification number of several calculators. Therein the court stated at pages 276–77:

> In other words, police who are rightfully upon a citizen's property for a limited purpose may not rummage about in the hope or expectation that incriminating evidence or contraband will turn up. But that is not this case. . . . The temporary detention may continue while the officer questions other persons present or radios police headquarters to check the information gained. . . . A noting

of the serial numbers on the calculators was such an intermediate response.

(Citations omitted.)

Here, the police merely noted the identification number and resumed their patrol, at which time they asked for a check on the number. It subsequently developed that the number was assigned to a vehicle reportedly stolen. Then having probable cause, the officers properly obtained a search warrant and proceeded in accordance thereto.

We find the noting of the serial numbers was not an unreasonable search and did not constitute a wrongful seizure of evidence. *Cf. Arizona v. McCleary,* 116 Ariz. 244, 568 P.2d 1142 (1977); *Singleton v. Oklahoma,* 568 P.2d 284 (Okla. Crim. App. 1977).[3] The convictions are affirmed.

GREEN, J., concurs.

McINTURFF, J. (dissenting)—I respectfully dissent. This case falls squarely within *State v. Murray,* 8 Wn. App. 944, 509 P.2d 1003 (1973), *aff'd,* 84 Wn.2d 527, 527 P.2d 1303 (1974), and *State v. Keefe,* 13 Wn. App. 829, 537 P.2d 795 (1975). Neither here nor in either of those cases were the officers aware at the time they "seized" the evidence that it was evidence of a crime. Here, as in *Murray* and *Keefe,* it was a *subsequent* investigation that disclosed the incriminating nature of the evidence seized by the officers.

Just as there was nothing incongruous about the presence of the television set from which the officers took the identification number in *Murray,* there is nothing incongruous about the Camaro in the garage here. Indeed, that is where

---

[3]There is also authority to the effect that even if the notation of the vehicle identification number is a search, it is not constitutionally prohibited so long as a legitimate reason exists for doing so. *United States v. Brown,* 470 F.2d 1120, 1122 (9th Cir. 1972); *United States v. Williams,* 434 F.2d 681 (5th Cir. 1970); *Pasterchik v. United States,* 400 F.2d 696 (9th Cir. 1968). Furthermore, other authorities hold it is not a search to take down a vehicle identification number when an officer has a reason to believe the vehicle is stolen, so long as the vehicle is lawfully available to him. *United States v. Johnson,* 413 F.2d 1396 (5th Cir. 1969), *aff'd,* 431 F.2d 441 (5th Cir. 1970); *Weaver v. United States,* 374 F.2d 878 (5th Cir. 1967); *Cotton v. United States,* 371 F.2d 385, 393 (9th Cir. 1967).

a vehicle in a state of disrepair likely would be found. Furthermore, the officers' knowledge of other Camaros in the area does not furnish them with knowledge of the vehicle's incriminating nature. There was nothing to establish a nexus between the vehicle in the garage and any of the other vehicles or between the vehicles and the defendants. In fact, the information possessed by the officers when they searched for and seized the identification number would not provide probable cause upon which to issue a warrant.

Thus, under these circumstances, *State v. Proctor*, 12 Wn. App. 274, 276–77, 529 P.2d 472 (1974), relied upon by the majority, is distinguishable. As the more complete context of that portion of the opinion cited by the majority reads:

> *In other words, police who are rightfully upon a citizen's property for a limited purpose may not rummage about in the hope or expectation that incriminating evidence or contraband will turn up. But that is not this case. The information which the police had about Proctor, coupled with the incongruity of the items seen in the business office, gave the officer probable cause to believe that he was looking at stolen property.* It was reasonable for him to note the serial numbers.

(Italics ours.)

If, as the majority strenuously argues, the officers entered the garage solely for the purpose of finding possible fight participants, injured victims or "people who might be hiding for one reason or another," they exceeded the scope of their exceptional and limited intrusion just as did the police officers in *Murray*. Their discovery of the Camaro could have been inadvertent, but the discovery of a metal identification tag on its dashboard was not. Finding and recording the identification number required an overt, searching act beyond the purpose for which the officers were lawfully present. This is a classic case of extending a justifiable but limited intrusion to "a general exploratory search from one object to another until something incriminating at last emerge[d]." *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).

Since the discovery was neither inadvertent nor made with knowledge of its incriminating nature, the plain–view exception does not apply; nor do any of the cases cited by the majority in footnote 3 of their opinion. Each of those cases is distinguishable as involving a legitimate reason for identifying the vehicle in question. In *United States v. Williams,* 434 F.2d 681 (5th Cir. 1970) and *United States v. Johnson,* 413 F.2d 1396 (5th Cir. 1969), there was knowledge of license–plate switching on the suspect vehicle; in *Weaver v. United States,* 374 F.2d 878 (5th Cir. 1967), the investigating officer knew the identification number of the vehicle prior to its seizure; in *Cotton v. United States,* 371 F.2d 385 (9th Cir. 1967), recording the identification number of the vehicle was necessary because it was being impounded by the police; and in *Pasterchik v. United States,* 400 F.2d 696 (9th Cir. 1968), the officers had information that the suspect vehicle belonged to someone other than the defendant. Finally, *United States v. Brown,* 470 F.2d 1120 (9th Cir. 1972) did not even involve an identification number. Instead, the officers there were searching for the vehicle registration number and uncovered incriminating evidence during the search.

Applying the plain–view doctrine here lets the exception swallow the rule. I would reverse the judgment of the Superior Court.

Reconsideration denied July 19, 1978.

Review denied by Supreme Court December 1, 1978.